[Crim. No. 15183. Second Dist., Div. Five. Sept. 19, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CARLOS LUJAN CHASCO, Defendant and Appellant.

Michael Palley, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Arthur B. Rosenfeld, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—After a court trial defendant was found guilty of having violated section 11501 of the Health and Safety Code (sale of narcotics). He was sentenced to state prison and appeals from the judgment.

In view of the nature of the issues raised on appeal a very condensed statement of the facts will suffice.

On March 14, 1967, an informer introduced defendant to Edward Noriega, an undercover officer. Defendant removed two balloons from his pocket and handed them to the informer. The informer then asked Noriega for $100. Noriega gave $100 to the informer who in turn handed the money to defendant. The transaction took place in the living room of the informer's home.

The two balloons contained a white powdery substance. Privately retained counsel stipulated that the balloons contained "the narcotic heroin."

Testifying in his own defense, defendant admitted that there had been a transaction with the informer. He denied, however, that he had sold anything and claimed that the deal had to do with two Doberman pinscher puppies which the informer was trying to sell to him. In any event, Officer Noriega was not present.

At the outset of the trial defendant had admitted six out of seven prior felony convictions with which he was charged. The court, however, with the concurrence of the district attorney, found "that the best interests of justice would be served if the defendant were committed pursuant to Section 3051 of the Welfare and Institutions Code," adjourned the criminal proceedings and referred the matter to the so-called psychiatric department of the court. It appears from the record that although defendant was then committed to the California Rehabilitation Center he was later rejected under the provisions of section 3053 of the Welfare and Institutions Code. After defendant was returned to the trial court, it conducted a hearing to determine whether or not the Director of Correc-

tions had abused his discretion in returning defendant. After hearing various witnesses the court found that there had been no such abuse. In addition it appeared that in the meanwhile the Adult Authority had revoked defendant's parole in another matter. The court thought that this action alone tied its hands, citing *In re Teran,* 65 Cal.2d 523 [55 Cal.Rptr. 259, 421 P.2d 107]. Defendant's attorney requested that defendant be returned to the California Rehabilitation Center pending an attempt to have the Adult Authority vacate its order revoking defendant's parole. The court refused to do so and sentence was imposed.

The most important of defendant's present contentions is the claim that counsel's stipulation that the balloons contained heroin deprived him of the right to confront the witness or witnesses who might have so testified. (*Pointer* v. *Texas,* 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 88].) He also argues that, lack of confrontation aside, California law does not permit counsel to stipulate to "the crucial fact in a lawsuit." For this proposition he cites *Harness* v. *Pacific Curtainwall Co.,* 235 Cal.App.2d 485 [45 Cal.Rptr. 454]. Lastly he argues that the stipulation deprived him of the effective assistance of counsel. (*People* v. *Ibarra,* 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487].) We consider these claims in inverse order.

There is nothing to the *Ibarra* point. The stipulation may have been nothing but a tactical move on the part of counsel. It was well designed to obviate unnecessary proof which would have focused the court's attention on the most damning part of the evidence. Defendant's position at the trial was not that the powder in the balloons was something other than heroin, but that he had had nothing to do with it. Certainly ineffective assistance does not affirmatively appear from this record. (*People* v. *Reeves,* 64 Cal.2d 766, 773-774 [51 Cal. Rptr. 691, 415 P.2d 35]; *People* v. *Hill,* 70 Cal.2d 678, 688 [76 Cal.Rptr. 225, 446 P.2d 329]; *People* v. *McGautha,* 70 Cal.2d 770, 783-784 [76 Cal.Rptr. 434, 452 P.2d 650]; *People* v. *Fain,* 70 Cal.2d 588, 600-601 [75 Cal.Rptr. 633, 451 P.2d 65].)

Turning to the alleged lack of authority of counsel to stipulate to a "crucial" fact, it is sufficient to say that while proof of the chemical composition of the powder was certainly essential to the People's case, defendant's denial of any connection with it relegated the issue to a subsidiary role. In the *Harness* case, on which defendant relies, it was held that an

attorney did not have the right to stipulate away his client's only interest in the litigation. The distinction is obvious.

More serious is defendant's confrontation point. He was entitled to confront all the witnesses against him, not just some, and there is nothing in the record to show that he, as distinguished from his attorney, (*Fay* v. *Noia*, 372 U.S. 391, 439 [9 L.Ed.2d 837, 869, 83 S.Ct. 822]) intelligently and competently waived this right.

If all we had to worry about is California case law interpreting the Constitution, defendant's point could be dismissed as frivolous. In *People* v. *Foster*, 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976], the attorney, without the defendant's express consent, submitted the case, in part, on the transcript of the preliminary hearing. It was held that the right of confrontation was effectively waived when "defense counsel, in defendant's presence and without objection by him, joined in the stipulation regarding the use of that transcript." (67 Cal.2d at 606.)

Without intending to question the authority of *Foster*, the cases on which it relied and those which have followed it (e.g., *People* v. *Ross*, 268 Cal.App.2d 525, 529-532 [74 Cal.Rptr. 99]), we think that the problem whether constitutional rights can be effectively waived by counsel without the client's express and intelligent consent must be examined in the light of *Boykin* v. *Alabama*, 395 U.S. 238 [21 L.Ed.2d 93, 89 S.Ct. 1709]. There the judgment was reversed because the record did not show a valid waiver of the various constitutional rights which the defendant gave up when he pleaded guilty.[1] The court specifically mentioned the right to "confront one's accusers" as one of the rights with respect to which it could not presume a waiver from a silent record.[2]

Trials should be triable. Almost every record we see shows that by a waiver of one constitutional right or another the prosecution's burden has been simplified. A good proportion of these waivers are simply made by counsel. Rarely does the record show whether counsel's apparent accommodation is prompted by trial tactics, negligence or sheer ignorance of the existence of the right. If it really follows from *Boykin* that every purported waiver of every constitutional right must be affirmatively shown to have been personally and intelligently

---

[1] The record simply showed that he so pleaded in the presence of his attorney. It did not affirmatively reveal any questions by the court or any statements to the court by the defendant.

[2] The other rights referred to were the privilege against compulsory self-incrimination and the right to trial by jury.

made by the client, it would be necessary to stop the proceedings and have a hearing on that question every time the attorney declines to cross-examine a witness or fails to object to inadmissible evidence.[3] Indeed, logically it might even follow that the record must show intelligent, personal waivers of constitutional rights not necessarily applicable, for who knows what a more vigorous cross-examination or the production of an additional witness might show.[4]

The solution lies not in logic, but in practicalities. After all, the question is not whether the courts should permit a deprivation of a federal constitutional right to go without redress; rather it is the extent to which, on direct appeal, the trial record must negative possible violations. In *Boykin* the court held that when the conviction is based on a guilty plea, the record must so show; but, as the dissent points out, even if the court had held otherwise, Boykin could have attempted to establish in habeas corpus proceedings that he pleaded in ignorance. As long as collateral relief is available the question becomes simply this: when does the need of the trial court to get on with its business take a back seat to the desirability of negativing the need for such further proceedings.

In this case we deal with a simple stipulation of fact, not fatal to the defense or even contradictory to the defendant's position at the trial.[5] We are convinced that in such a case the Constitution does not demand affirmative demonstration that

---

[3]It would be immaterial whether the inadmissibility rests on constitutional grounds. Counsel can be ineffective in more prosaic ways, such as by failing to block oral testimony of the contents of a writing. (Evid. Code, § 1500.) Unless the trial court explores the reasons for such a failure, it would not know whether what is taking place is a deprivation of the right to effective representation, a right which, presumably, the client cannot waive intelligently unless someone explains the best evidence rule to him. Of course, at such a hearing it may appear that counsel's inaction was a tactical decision within his professional province. (*Henry* v. *Mississippi*, 379 U.S. 443, 451 [13 L.Ed.2d 408, 414, 85 S.Ct. 564].) The point is, that without an exploratory inquiry by the court, we would not know what it was.

[4]For example in *People* v. *Cheatham*, 263 Cal.App.2d 458, 463 [69 Cal. Rptr. 679], it was argued that a voluntary confession made to an ordinary witness might have been illegally obtained because the record did not affirmatively show that the person to whom it was made, and who had not advised the defendant of his constitutional rights, was *not* a policeman. The logical extension of defendant's point would require the trial court to determine the status of the person to whom the confession is made so that, if it was a policeman, it could then explain to the accused that his attorney can object to the admissibility of the confession. Only then can the accused intelligently waive his right to keep the confession out.

[5]We stress again that the chemical nature of the powdery substance is not what the trial was about.

it has not been violated. Just where the line between a guilty plea and a stipulation of fact such as ours should be drawn, we need not attempt to determine.[6] There may be stipulations of fact so destructive of the accused's position at the trial that to permit them to be made without a showing of his intelligent consent is to court reversal. This is not such a case.

As already noted, defendant is not without a remedy. If he can adequately allege that his attorney's stipulation deprived him of the right to confrontation without a constitutionally valid waiver, he would undoubtedly be entitled to an evidentiary hearing on habeas corpus.[7] *Berger* v. *California*, 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], held that *Barber* v. *Page*, 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], was to be given "fully retroactive application."

By pointing to habeas corpus as an available remedy we by no means intimate that defendant would be entitled to a retrial simply on a finding that he did not personally and intelligently waive his right to confrontation. He would still have to overcome problems arising out of the attorney's power to adopt trial strategy except "where the circumstances are exceptional" (*Henry* v. *Mississippi*, 379 U.S. 443, 451 [13 L.Ed.2d 408, 414, 85 S.Ct. 564]), harmless error rules (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]) and so forth.

Indeed, the complexities of the issues in a habeas corpus hearing illustrate the absurdity of requiring the making of a series of records of intelligent waivers in the middle of criminal trials. Further, defendants may derive positive benefits from being relegated to habeas corpus. One example is enough: suppose the attorney and the defendant have not, in fact, discussed a particular stipulation which the attorney wants to make. If it is of the type which requires the personal consent of the defendant and if the court inquires into the existence of such consent during the trial, the defendant's responses to the court's inquiry may well conform to what he

[6]By pleading guilty a defendant, in effect, relieves the state of the burden of bringing him to trial. It is not unreasonable that such a waiver should be more closely scrutinized than matters which occur during the trial itself. In pointing to this distinction we do not intend to express a belief that the *Boykin* rule does not reach any waivers made after the trial has started.

[7]We express no opinion on the burdens of producing evidence and burdens of proof at such a hearing, nor on the effect of the present record with respect to the creation of any presumption affecting either such burden.

believes his lawyer wants him to say, rather than to the truth. A searching factual hearing on habeas corpus is far more likely to establish the true nature of a purported waiver of a constitutional right than are formula responses made during the trial.

 Defendant further claims that the trial court erred when it refused to return him to the California Rehabilitation Center to await the outcome of his attorney's attempts to have him restored to parole status. He claims that "this is precisely what was ordered by the Supreme Court in *In re Swearingen,* 64 Cal.2d 519 [50 Cal.Rptr. 787, 413 P.2d 675]."

In that case the Supreme Court found that the Director of Corrections had prematurely concluded that Swearingen was not a fit subject, but held that the revocation of his parole disqualified him for treatment. It added to its opinion denying habeas corpus relief the following sentence: "Here the Adult Authority has revoked petitioner's parole. Should the Adult Authority in the exercise of its discretion now restore petitioner on parole, he should be returned to the trial court for recommitment to the rehabilitation center, subject to the powers of the Director of Corrections under Welfare and Institutions Code section 3053." (64 Cal.2d at p. 522.) That statement was correct because, absent the parole revocation, Swearingen was in the shoes of a person who had been properly committed to the California Rehabilitation Center and improperly rejected. The Supreme Court did not, however, order that Swearingen be held at the center pending possible proceedings leading to a restoration of parole.

Defendant advances various arguments why the trial court's determination that he was properly rejected under section 3053 was wrong. Indeed he attacks the constitutionality of that section. The question presents itself whether we should discuss his contentions. We decline to do so. On this appeal our function is merely to state whether the trial court was right when it sentenced defendant, not whether all of the reasons which caused it to do so were correct. The revocation of the parole gave it no choice, and the judgment must therefore be affirmed. We are not free, as was the Supreme Court in *Swearingen,* a habeas corpus proceeding, to write an opinion deciding what should be done with defendant if a hypothetical state of facts—restoration to parole status—becomes a reality. The difference between an appeal and a decision on habeas corpus lies in the broader function of the writ, which

278

today is used as a vehicle for the declaration of rights, as well as a means for release from illegal confinement. (*In re Fluery,* 67 Cal.2d 600, 601 [63 Cal.Rptr. 298, 432 P.2d 986] ; Witkin, Cal. Criminal Procedure (1963) §§ 789, 790.)

The judgment is affirmed.

Stephens, J., and Reppy, J., concurred.

A petition for a rehearing was denied October 2, 1969, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied November 26, 1969.