[No. F007654. Fifth Dist. Mar. 22, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN L. STUCKEY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I through II and V.

COUNSEL

Frank O. Bell, Jr., and Harvey R. Zall, State Public Defenders, under appointment by the Court of Appeal, Joan W. Cavanagh, Chief Assistant Public Defender, and Julia Cline Newcomb, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

BEST, J.—

### PROCEDURAL HISTORY

On May 16, 1986, a second amended information was filed which charged defendant with one count of burglary (Pen. Code, §§ 459, 460) occurring on November 27, 1984 (the Murrietta burglary), a second count of burglary occurring on July 21, 1985 (the Palomo burglary), and a count of aggravated assault (Pen. Code, § 245, subd. (a)(1)) also occurring on July 21, 1985. Counts II and III also alleged as an enhancement that at the time of those offenses, defendant had been released from custody pending trial on the burglary charged in count I. (Pen. Code, § 12022.1.) Finally, count III alleged as another enhancement that defendant inflicted great bodily injury on the victim. (Pen. Code, § 12022.7.)

Defendant pled not guilty to the second amended information. Also, defendant stipulated that he had been released on his own recognizance

after his arrest from the first count of burglary at the time the second count of burglary and the assault occurred.

After trial, the jury returned verdicts of guilty of first degree burglary on count I, guilty of second degree burglary on count II, and not guilty on the assault charge. Defendant's motion for new trial was denied and on July 11, 1986, the trial court sentenced defendant to state prison for a term of four years on count I, a consecutive eight months term on count II, and an additional two-year consecutive term for the Penal Code section 12022.1 enhancement, for a total term of six years eight months.

### STATEMENT OF THE FACTS

#### COUNT I

About 7 a.m. on the morning of November 27, 1984, Sergeant Roger Enmark of the Fresno Police Department observed defendant driving a 1964 Chevrolet El Camino pickup with two other occupants in the car. They backed out of a driveway on East Shields, and he followed them. On Ashlan, another police vehicle, driven by Officer Brown, began to follow defendant, while Sergeant Enmark went in the opposite direction.

Sergeant Enmark soon resumed surveillance and observed defendant parking along the curb at 3335 West Ashcroft in Fresno. The back end of the pickup was in front of the driveway of the house. The two other occupants had gotten out of the truck around the corner. They walked along the sidewalk into the garage, returned with a lawn mower "and running with the lawn mower threw it into the back of the waiting vehicle and jumped into the back of the pickup."

The El Camino then "took off." Sergeant Enmark, with the help of four other police vehicles, followed defendant and stopped the El Camino. Defendant was at the wheel. The two other individuals were minors, one of whom was the defendant's younger brother. The sergeant sent an officer to the address from which the lawn mower was taken. The officer returned with the resident, Mrs. Murrietta, who identified the lawn mower as hers.

Mr. Murrietta, who is a gardener, had left for work that morning about 7:30. He identified the stolen lawn mower as being his and stated that he did not give anyone permission to take the mower from his garage.

#### COUNT II

On the afternoon of July 21, 1985, Emilio Palomo was at his home on East Madison in Fresno. In response to a knock at his door, he looked out

the kitchen window and saw a teenager at his door. The young man asked if Palomo would like his trees pruned. Palomo said, "No," and the young man walked away down the driveway.

Palomo looked out his garage door and saw a white pickup in the driveway. He saw the teenager who had come to his door get in on the passenger side. He watched the truck drive off, but before the truck was out of sight, he noticed that his tool box was gone. He is an electrician by trade and had "a fairly large tool box." He then got in his truck and followed them.

Palomo eventually stopped the truck. The occupants told him that they did not have his tools and drove off again. He recognized his tool box when they tossed it out the window on the passenger side. He did not stop to pick it up, but followed the thieves instead. He was eventually able to pull in front of them and get them to stop.

Palomo got out and walked over to the truck. He reached in to pull the keys out of the ignition, but defendant grabbed them first. Palomo told them they were not to leave and that they should stay until he got the police. They told him that their father's tool box had been stolen and that they were trying to replace it. They were shouting at each other, and eventually a fight occurred. Defendant struck Palomo with a two by four in the back of the head "awfully hard" and then struck him again on the shoulder. When he fell to the ground, the boys kicked him in the back and in the face repeatedly. They then drove off. Palomo had a broken nose, a black eye, and hurt ribs. He missed work for three months because of the injury. His tool box was later recovered. Palomo later identified defendant as the youth who had come to his door and who had fought with him.

DEFENSE

As to count I, the Murrietta burglary, defendant claimed that a man offered him $10 to get a lawn mower from his garage while the man waited at a store for a friend. Stuckey had forgotten the address of the house, but looked for a house matching that which had been described. Thinking that the Murriettas' house was the correct one, defendant and his companions removed the lawn mower from the open garage.

As to count II, the defense was an alibi. Defendant and several other witnesses testified that he was at a wedding in Delhi, 80 miles away, when the Palomo burglary occurred.

DISCUSSION

I, II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

III

ALLEGED FAILURE OF THE TRIAL COURT TO ADVISE OF
BOYKIN-TAHL RIGHTS

■   Defendant next asserts that the Penal Code section 12022.1 enhancement must be stricken because he was not fully apprised of his rights as required in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449] at the time he stipulated to having been released on his own recognizance at the time of the occurrence of the Palomo burglary. The court advised defendant of his right to have a jury decide whether or not he had been released on his own recognizance on the charges of the Murrietta burglary at the time he committed the Palomo burglary but did not advise him as to any other rights he may have had, such as his right to confrontation and against self-incrimination. He now contends that this was error. We disagree.

In *Boykin* the Supreme Court held that it was error "for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." (*Boykin* v. *Alabama, supra,* 395 U.S. at p. 242 [23 L.Ed.2d at p. 279].) In *Tahl,* the California Supreme Court held that a defendant must be advised of his rights to confrontation and against self-incrimination, and a waiver of these rights must be obtained before his guilty plea is accepted. (*In re Tahl, supra,* 1 Cal.3d at pp. 132-133.) "The mandate of *Tahl,* however, applies only to pleas of guilty and situations tantamount to a plea of guilty." *People* v. *Murphy* (1972) 8 Cal.3d 349, 366 [105 Cal.Rptr. 138, 503 P.2d 594].)

In *People* v. *Chasco* (1969) 276 Cal.App.2d 271 [80 Cal.Rptr. 667], the court looked at a stipulation to the fact that two balloons which had been sold by the defendant contained heroin in the light of the *Boykin* decision. It held: "In this case we deal with a simple stipulation of fact, not fatal to the defense or even contradictory to the defendant's position at the trial. We are convinced that in such a case the Constitution does not demand affirmative

---

* See footnote, *ante,* at page 876.

demonstration that it has not been violated. Just where the line between a guilty plea and a stipulation of fact such as ours should be drawn, we need not attempt to determine. There may be stipulations of fact so destructive of the accused's position at the trial that to permit them to be made without a showing of his intelligent consent is to court reversal. This is not such a case." (*Chasco, supra,* at pp. 275-276, fns. omitted.)

Similarly, in *People* v. *McCoy* (1974) 40 Cal.App.3d 854 [115 Cal.Rptr. 559], defense counsel had stipulated that the capsules which the defendant had been accused of selling contained the restricted dangerous drug sodium secobarbital. The defendant contended that the *Boykin* rule applied and that the stipulation precluded jury consideration of a material element of the offense. (*McCoy, supra,* at p. 857.) The court disagreed, citing *Chasco* for the proposition that the *Boykin* requirements did not apply to stipulations to certain factual matters. It distinguished such factual stipulations from the situation presented in *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561], where the Supreme Court held that the complete admonition pursuant to *Boykin* and *Tahl* need be given where a defendant stipulates to a prior conviction.

The *McCoy* court emphasized the fact that, once a prior conviction has been admitted, adverse consequences to the defendant are automatic upon conviction on the primary charge. (*People* v. *McCoy, supra,* 40 Cal.App.3d at pp. 858-859.) It explained, "We do not believe that the factors which influenced the *Yurko* court to apply the *Boykin* rules to admissions of priors necessitate the same approach to the question of stipulations of counsel to certain *factual* matters." (*Id.* at p. 859, original italics.)

In the instant case, the defendant stipulated to the fact that he had been released on his own recognizance at the time of the Palomo burglary. As defendant himself points out, that was merely one element of the basis for a Penal Code section 12022.1 enhancement. The People were still required to prove the remaining elements, i.e., his guilt on the primary and secondary offenses, before the enhancement would apply. Therefore, this stipulation did not resemble in its effect the stipulation entered into in *Yurko* which would automatically affect the defendant adversely upon conviction of the charge to which the enhancement was appended. It more resembles the factual stipulations dealt with in *McCoy* and *Chasco* which did not "lend themselves to the strictures attendant to a guilty plea or its equivalent." (*People* v. *McCoy, supra,* 40 Cal.App.3d at p. 859.)

Furthermore, this is the precise reason a complete admonition was not given in this case. When the court inquired of the deputy district attorney as to whether or not she wished to accept the stipulation, she raised the issue

of whether or not what was required was an "advisement of his rights to remain silent and the whole bit." The following discussion then took place: "THE COURT: Well, he is not admitting the enhancement because he is not admitting that he committed a crime while released from custody.

"Ms. MITCHELL: I know.

"THE COURT: He is stipulating to some of the facts that would be necessary, but before that enhancement is effective, you still have to prove beyond a reasonable doubt to the jury that he committed the crime. So, I don't think that we need a full Tahl waiver of his rights, he's not pleading guilty to anything.

"MR. PEDOWITZ: That's right.

"THE COURT: He is stipulating to certain facts for the purpose of avoiding having the O.R. brought to the attention of the jury. Jury's going to be told everything else.

"Ms. MITCHELL: All right. The People will accept the stipulation, Your Honor."

Both the court and defense counsel agreed that the defendant was merely stipulating to a fact, and that he was not fully admitting the enhancement. There was no error stemming from the fact that a complete admonition as to defendant's constitutional rights was not given.

IV

THE PENAL CODE SECTION 12022.1 ENHANCEMENT

■ Count II of the second amended information charging defendant with commission of the Palomo burglary contained the following enhancement allegation: "It is further alleged that the said defendant committed said crime while released from custody pending trial on Count One of the information, a violation of Penal Code Section 459-460, within the meaning of Penal Code Section 12022.1."

On May 16, 1986, prior to the commencement of trial, defendant proposed a stipulation relating to the section 12022.1 enhancement allegation. The discussion surrounding the stipulation was as follows: "THE COURT: Very well. Then we will, of course, proceed to trial by jury this morning on this matter, and I think we briefly mentioned on the record the Defense request to—that the People accept a stipulation regarding the enhancement

alleged in Count Two and Count Three based on Penal Code Section 12021 - 22.1.

"MR. PEDOWITZ [defense counsel]: That's correct, Your Honor.

"THE COURT: Very well. If you will state your position on the record.

"MR. PEDOWITZ: Oh, on or about July 21st, 1985, when the allegations in Count Two and Three are alleged to have occurred, my client, Kevin Stuckey, was released on his own recognizance from the allegations that are stated in Count One which would—occurred on November 27th, 1984.

"THE COURT: Now, Mr. Stuckey, you understand you have a right to have a jury decide that issue, and by stipulating to those facts, the—those factual issues will be decided based on your stipulation. Do you understand that?

"THE DEFENDANT: Yes, I do.

"THE COURT: All right. Of course, if you are not convicted of either of those charges, why, then, of course, it doesn't have any effect on these proceedings.

"THE DEFENDANT: I do, Your Honor.

"THE COURT: You do understand that by entering into this stipulation, you are in effect giving up your rights to a jury trial on the issues to which you have stipulated?

"THE DEFENDANT: Say that again, Your Honor.

"THE COURT: You are giving up your right to have a jury decide whether it is true as alleged as an enhancement that—that while—that you were out on your own recognizance on the charges of the burglary of Murrietta's place on West Ashcroft. You would be admitting that after that charge was made against you, and while you were out on your own recognizance on that charge, uh, that the charges in Count Two and Count Three arose. You wouldn't be admitting the truth of those charges but simply—

"THE DEFENDANT: No, I wouldn't plead guilty.

"THE COURT: You're not pleading guilty to anything.

"THE DEFENDANT: No.

"THE COURT: But you are admitting that you were out on your own recognizance on July 21, 1985.

"THE DEFENDANT: Yes, when these alleged things occurred.

"THE COURT: And you do know, therefore that the jury won't be required to decide whether you were out on your own recognizance at that time?

"THE DEFENDANT: Yes, I do.

"THE COURT: People wish to accept that stipulation?

"Ms. MITCHELL [prosecutor]: Yes, I am, Your Honor. I'm wondering if perhaps because of the right that a defendant has to have it pled, proved and so forth in the information, it isn't—has to be in the form of a full scale guilty plea, waiver of a right to have a jury trial, advisement of his rights to remain silent and the whole bit.

"THE COURT: Well, he is not admitting the enhancement because he is not admitting that he committed a crime while released from custody.

"Ms. MITCHELL: I know.

"THE COURT: He is stipulating to some of the facts that would be necessary, but before that enhancement is effective, you still have to prove beyond a reasonable doubt to the jury that he committed the crime. So, I don't think we need a full Tahl waiver of his rights, he's not pleading guilty of anything.

"MR. PEDOWITZ: That's right.

"THE COURT: He is stipulating to certain facts for the purpose of avoiding having a O.R. brought to the attention of the jury. Jury's going to be told everything else.

"Ms. MITCHELL: All right. The People will accept the stipulation, Your Honor.

"THE COURT: Very well. I'm satisfied that Mr. Stuckey understands, that he's made this request to avoid having the jury know he was out on his own recognizance during the time of this second incident, and gives up none of his rights either as to Count One, Two or Three as to the principal charge.

"MR. PEDOWITZ: Yes.

"THE DEFENDANT: Yes, I do."

Although the clerk's minutes and the abstract of judgment indicate that the Penal Code section 12022.1 enhancement was "charged and found," our review of the record on appeal revealed that no explicit finding was made that the enhancement allegation was true. We therefore invited, and have received, additional briefing on the effect of the absence of such an explicit finding.

Defendant contends that since he did not waive a jury trial as to the enhancement allegation, and since the jury did not return a verdict as to the enhancement allegation, this case parallels that of *People* v. *Najera* (1972) 8 Cal.3d 504 [105 Cal.Rptr. 345, 503 P.2d 1353] and remand for such a finding by the trial court would be constitutionally inadequate. In *Najera*, the People had failed to obtain a jury finding on a Penal Code section 12022.5 enhancement allegation. Our Supreme Court ruled that due to the impracticability of having a new jury trial on the sole issue of the enhancement, the People had "waived the application of section 12022.5 by failing to have the matter resolved at trial." (*Najera, supra,* at p. 512.) This rule was applied to a court trial situation in *People* v. *Anderson* (1975) 50 Cal.App.3d 325, 334 [126 Cal.Rptr. 68]: "We hold that whenever the People fail to have the applicability of section 12022.5 determined at trial, be the trial by court or by jury, they will be deemed to have waived it."

Defendant's first premise is correct, his second is not. The above-quoted discussion clearly shows that defendant stipulated to the existence of only one of the essential elements of the Penal Code section 12022.1 allegation, that being that he was free from custody on his own recognizance for the charged primary offense, the Murrietta burglary, at the time of the commission of the charged secondary offense, the Palomo burglary. He did not waive his right to a jury trial on the remaining essential elements, his guilt or innocence of either or both of the charged offenses. Defendant was duly tried by jury for the charged offenses and by returning a verdict of guilty as to both charged burglaries, the jury made the requisite remaining findings on the Penal Code section 12022.1 enhancement allegation. To have required the jury to return a finding as to the truth of the allegation would have defeated the purpose of defendant's stipulation—keeping from the jury the fact that he had been released from custody pending trial for the Murrietta burglary at the time of the commission of the Palomo burglary.

Defendant's reliance on *People* v. *Washington* (1971) 17 Cal.App.3d 470 [94 Cal.Rptr. 882] is misplaced. There, the information accused defendant

of robbery and charged that at the time of the robbery he was armed with a deadly weapon, a .22 caliber revolver. The court, sitting without a jury, found the defendant guilty of robbery and found him to have been armed with a deadly weapon. The evidence at trial was sufficient to support a finding under either Penal Code section 12022 (armed) or section 12022.5 (personal use). The appellate court held: ". . . the judgment of the trial court is ambiguous in that it did not explicitly state whether it found defendant had violated section 12022 or whether he had violated the more specific provisions of section 12022.5. In view of the severity of the additional punishment compelled by section 12022.5 we think defendant is entitled to a specific finding in the judgment as to whether his conduct amounted to a violation of that section. If the court should find a violation of section 12022.5 then its judgment should so state." (*Washington, supra,* at p. 477.)

In the instant case, at the time of oral pronouncement of judgment, the trial court expressly stated, "In addition, there is an enhancement for violation of Penal Code section 12022.1, the fact that at the time you committed the burglary charged in Count Two you were on your own recognizance in [*sic*] the burglary charged in Count One and you've been convicted of both of them, . . ."

Additionally, as earlier noted, both the clerk's minutes and the abstract of judgment recite that the Penal Code section 12022.1 enhancement was "charged and found."

Accordingly, not only were the essential elements of the Penal Code section 12022.1 enhancement properly pleaded in the information, they were also proved by the defendant's stipulation together with the jury's verdicts, and, unlike in *People* v. *Washington, supra,* there is a specific finding in the judgment that defendant's conduct violated Penal Code section 12022.1.

V*

THE DENIAL OF DEFENDANT'S MOTION TO SEVER

. . . . . . . . . . . . . . . . . . . .

---

* See footnote, *ante*, page 876.

## VI

### ALLEGED DUAL USE OF FACTS

Defendant lastly contends that the trial court improperly used the fact that he had been released on his own recognizance at the time he committed the second burglary in imposing consecutive sentences as well as adding an additional two years to his sentence. However, this sentencing structure is mandated by Penal Code section 12022.1 itself. Subdivision (b) requires that the sentence for the second offense "shall be subject to a penalty enhancement of an additional two years in state prison . . . ." Subdivision (e) requires that "any state prison sentence for the secondary offense shall be consecutive to the primary sentence." Therefore, even though there is a dual use of facts here, it is one which is mandated by the express terms of the statute.

### DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Ballantyne, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 13, 1988.