[No. S030824. Dec. 9, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JESS DELREY ADAMS, Defendant and Appellant.

## COUNSEL

Donna S. Davis, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rudolf Corona, Jr., Janelle B. Davis, M. Howard Wayne and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BAXTER, J.—Penal Code section 12022.1[1] permits the imposition of an additional two-year term (enhancement) to be served consecutively to the term being imposed for a criminal offense (secondary offense), *and for consecutive service of the secondary offense term,* if the defendant committed the secondary offense while on bail or own recognizance release pending trial or appeal on another charge (primary offense).[2] The People must charge the enhancement in the information or indictment charging the secondary

---

[1] All statutory references herein are to the Penal Code unless otherwise indicated.

[2] Section 12022.1, subdivision (b) provides: "Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court."

The section also provides:

"(d) Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary

offense and, unless admitted by the defendant, must prove the truth of the enhancing allegation at trial. (§ 12022.1, subd. (c). See also § 1170.1, subd. (f).)

The Court of Appeal concluded that a defendant's stipulation that the secondary offense was committed while on bail or own recognizance release for the primary offense is analogous to the admission of a prior conviction when charged for the purpose of enhancing a term. (See, e.g., §§ 667, 1170.1, subd. (f).) Therefore, the court held, the stipulation had to be accompanied by advice regarding the personal waiver of the defendant's constitutional rights to silence, confrontation and cross-examination, and jury trial, i.e., by *Boykin-Tahl* advice and waivers. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] [*Boykin*]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449] [*Tahl*].) This followed, the Court of Appeal believed, from this court's holding in *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561] (*Yurko*), in which the *Boykin-Tahl* requirements were applied to a defendant's admission that he had suffered prior convictions which were alleged for the purpose of adjudging the defendant an habitual criminal. (Former § 644.)

Because that holding conflicts with *People* v. *Stuckey* (1988) 199 Cal.App.3d 876 [245 Cal.Rptr. 225], we granted the People's petition for review to resolve the conflict. We conclude that because defendant's stipulation was a stipulation to evidentiary facts, not an admission that the enhancement allegation itself was true or an admission of every element necessary to imposition of punishment on the section 12022.1 charge, the *Boykin-Tahl* and *Yurko* requirements are inapplicable.

The Court of Appeal affirmed the judgment notwithstanding what it believed to be inadequate *Boykin-Tahl* compliance. We shall, therefore, affirm that court's judgment.

---

offense at the time of sentencing for that offense . . . . If the person is acquitted of the primary offense the stay shall be permanent.

"(e) If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence of the secondary offense shall be consecutive to the primary sentence.

"(f) If the person is convicted of a felony for the primary offense, is granted probation for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be enhanced as proved in subdivision (b).

"(g) If the primary offense conviction is reversed on appeal, the enhancement shall be suspended pending retrial of that felony. Upon retrial and reconviction, the enhancement shall be reimposed. If the person is no longer in custody for the secondary offense upon reconviction of the primary offense, the court may, at its discretion, reimpose the enhancement and order him or her recommitted to custody."

I

FACTS

By information filed May 1, 1991, in the Riverside County Superior Court, respondent was charged with six felony counts and one misdemeanor count.[3] The information also alleged that the offenses charged in three of the counts (counts V, VI, and VII) had been committed while defendant was released from custody prior to the finality of the judgment on a primary offense within the meaning of section 12022.1.

The first four counts were severed and defendant proceeded to trial on the remaining counts. Prior to jury selection the court denied defendant's motion for bifurcation of the trial on those counts and the section 12022.1 allegation. Then, after the jury had been empaneled, defendant proposed this stipulation to be presented to the jury: "At the time Jess Delrey Adams allegedly committed the offenses for which he is presently on trial, he was out of custody on his own recognizance, or on bail for other charges which were then pending against him."

The trial court advised defendant: "[Y]ou would have the right to have the evidence brought in relating to this, which is the documents to show that charges were filed against you and so forth, and have them actually presented to the jury. If you enter into this stipulation, you will be waiving your right to confrontation to the extent of not having—not forcing the District Attorney to actually present the proof in open court." Defendant acknowledged that he understood that advice, and, when asked if he was willing to waive his right to confrontation, did so.

The court also advised defendant that while the jury would have to make a finding that he was out on bail, if the stipulation was presented the jury would almost necessarily find that the allegation was true. Defendant acknowledged his understanding of that advice. Finally, the court advised defendant that the term enhancement of two years could not be imposed unless he was found guilty of one other offense, but, "by admitting this, you

---

[3]Count I, violation of section 12090, altering identifying marks on firearm; count II, violation of section 12020, subdivision (a), possession of short-barrelled shotgun; count III, violation of Health and Safety Code section 11377, subdivision (a), possession of methamphetamine; count IV, violation of Business and Professions Code section 4149, unlawful possession of hypodermic needle and syringe (a misdemeanor); count V, violation of section 459, burglary; count VI, violation of Vehicle Code section 10851, unlawful taking of vehicle; count VII, violation of section 496, receipt of stolen property.

have admitted a big part of what would have to be proved for the out-on-bail allegation." Once again, defendant acknowledged his understanding of the advice. He then confirmed that it was his desire to enter into the stipulation.[4]

The jury convicted defendant of attempted burglary (§§ 664/459) on count V, vehicle theft (Veh. Code, § 10851) on count VI, and receiving stolen property (§ 496) on count VII, and found the section 12022.1 allegations true. He then pleaded guilty to the four severed counts pursuant to an agreement under which he was sentenced to a total of four years and eight months' imprisonment on all seven charges.

On appeal, defendant argued that his stipulation was void because the court had not expressly advised him that he would be waiving his right to trial by jury, to confront his accusers, and the privilege against self-incrimination. The Court of Appeal agreed both that full *Boykin-Tahl* advice and waivers were required, and that *People* v. *Stuckey, supra,* 199 Cal.App.3d 876, was incorrect in concluding otherwise. It concluded that defendant had been adequately advised of his right to jury trial and to confrontation, and had waived those rights, but defendant had not been advised of his privilege against self-incrimination. The Court of Appeal nonetheless affirmed the judgment after concluding that on the facts of this case the failure to advise defendant of his privilege against self-incrimination was harmless.

## II

### THE BOYKIN-TAHL REQUIREMENT

The Supreme Court held in *Boykin, supra,* 395 U.S. 238, that it would not presume from a silent record that *in pleading guilty* a defendant in a state criminal trial had validly waived his rights to jury trial, against compulsory incrimination, and to confront his accusers. It did so in recognition that a guilty plea "is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." (*Id.*, at p. 242 [23 L.Ed.2d at p. 279].)

The court further observed: "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review

---

[4]Defendant entered into the stipulation for tactical reasons—to keep the jury from learning the nature of the offenses with which he was charged and released on bail when the secondary offenses were committed.

that may be later sought [citations], and forestalls the spin-off of collateral proceedings that seek to probe murky memories." (395 U.S. at pp. 243-244 [23 L.Ed.2d at pp. 279-280], fns. omitted.)

In *Tahl*, *supra*, 1 Cal.3d 122, we concluded that, since the Supreme Court had emphasized the failure of the record in *Boykin*, *supra*, 395 U.S. 238, to reflect the defendant's understanding of the constitutional rights he was foregoing, *Boykin* required, in every case in which a guilty plea was entered, direct evidence on the face of the record that a guilty pleading defendant "was aware, or made aware, of his right to confrontation, to a jury trial and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (1 Cal.3d at p. 132.) We added a requirement that the court obtain express waivers of the right to confrontation and privilege against self-incrimination, noting that an express waiver of jury trial was already required in this state. (*Id.*, at pp. 132-133.) At a minimum *Boykin* required "a specific and express enumeration and waiver by the accused of the three constitutional rights surrendered by a guilty plea . . . ." (*People* v. *Rizer* (1971) 5 Cal.3d 35, 42 [95 Cal.Rptr. 23, 484 P.2d 1367].) If the record did not reflect compliance with this mandate, the error in entering judgment on the defendant's plea of guilty was error that was reversible per se.[5]

■ The prophylactic *Boykin-Tahl* requirements are not limited to pleas of guilty, however. A defendant's agreement to submit the case on the record of the preliminary hearing in circumstances tantamount to a plea of guilty is also subject to those requirements (*People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452]; *In re Mosley* (1970) 1 Cal.3d 913, 927 [83 Cal.Rptr. 809, 464 P.2d 473]) as is an admission of an allegation made in the information or indictment for the purpose of increasing the punishment otherwise applicable to the offense. (*Yurko*, *supra*, 10 Cal.3d 857, 860.)

*Yurko*, *supra*, was the first case in which this court was called upon to consider the applicability of the *Boykin-Tahl* requirements to a defendant's plea to an allegation other than one charging commission of a criminal offense. There, a defendant charged with burglary (§ 459) admitted allegations that he had suffered three prior felony convictions. That admission led to an adjudication that he was an habitual criminal and to a sentence of

---

[5]In *People* v. *Howard* (1992) 1 Cal.4th 1132, 1178 [5 Cal.Rptr.2d 268, 824 P.2d 1315], the court reexamined *Boykin* and our prior understanding of that decision, and concluded that failure to specifically articulate each of the three constitutional rights waived by a plea of guilty or admission of a prior conviction does not require reversal if the record nonetheless makes it clear that the "plea was voluntary and intelligent under the totality of the circumstances."

imprisonment for life under former section 644, rather than to the imposition of sentence for the burglary of which the jury had convicted him. We held that "henceforth an accused must be advised of (1) specific constitutional protections waived by *an admission of the truth of an allegation of prior felony convictions*, and (2) those penalties and other sanctions imposed as a consequence of a finding of the truth of the allegation." (*Yurko, supra,* 10 Cal.3d 857, 860, italics added.)

In *Yurko, supra,* we recognized that guilt of a substantive crime was not at stake, but reasoned that "the practical aspects of a finding of prior convictions may well impose upon a defendant additional penalties and sanctions which may be even more severe than those imposed upon a finding of guilty without the defendant having suffered the prior convictions." (10 Cal.3d at p. 862.) Since the Legislature had provided for a trial on allegations of prior convictions, thereby giving the defendant a right to jury trial and proof beyond a reasonable doubt, we accepted the petitioner's argument that the procedure leading to imposition of the added penalties was protected by specific constitutional provisions which could not be waived unless the defendant had knowledge of the rights and understood the impact of his plea on those rights.

"Because of the significant rights at stake in obtaining *an admission of the truth of allegations of prior convictions,* which rights are often of the same magnitude as in the case of a plea of guilty, courts must exercise a comparable solicitude in extracting *an admission of the truth of alleged prior convictions.* Although the issue was not before the Supreme Court in *Boykin* nor before us in *Tahl,* it is nevertheless manifest that an accused is entitled to be advised of those constitutional rights waived by him in making such an admission. As an accused is entitled to a trial on the factual issues raised by a denial of the allegation of prior convictions, *an admission of the truth of the allegation* necessitates a waiver of the same constitutional rights as in the case of a plea of guilty." (*Yurko, supra,* 10 Cal.3d 857, 863, italics added.)

In no case, however, did we hold, or even intimate, that a defendant's admission of evidentiary facts which did not admit every element necessary to conviction of an offense or to imposition of punishment on a charged enhancement, as opposed to an admission of guilt of a criminal charge or of the truth of an enhancing allegation where nothing more was prerequisite to imposition of punishment except conviction of the underlying offense, was subject to the *Boykin-Tahl* or *Yurko* requirements. That question was not presented. When the question of evidentiary stipulation has been presented in other contexts, however, we have held that such admissions or stipulations need not be preceded by such advice and waiver of rights, and advice regarding the penalty consequences of the admission.

In *People* v. *Hovey* (1988) 44 Cal.3d 543 [244 Cal.Rptr. 121, 749 P.2d 776], the defendant, charged with murder with a kidnapping special circumstance (§ 187; former § 190.2, subd. (c)(3)(ii)), stipulated to his identity as the kidnapper and that he had done the act that led to the death of the victim. On appeal he claimed that he had, in effect, admitted the commission of second degree murder and that the trial court should have explained the potential penal consequences to him. We rejected the claim on the ground that the stipulation was not "the legal equivalent of a guilty plea or other admission that necessarily would have definite penal consequences." (44 Cal.3d at p. 567; see also *People* v. *Lang* (1989) 49 Cal.3d 991, 1038 [264 Cal.Rptr. 386, 782 P.2d 627].)

Then, in *People* v. *Ramirez* (1990) 50 Cal.3d 1158, 1184 [270 Cal.Rptr. 286, 791 P.2d 965], noting that our observation in *People* v. *Hall* (1980) 28 Cal.3d 143, 157, footnote 9 [167 Cal.Rptr. 844, 616 P.2d 826], that the admission of ex-felon status was analogous to admission of a prior in the context of *Yurko*, *supra*, 10 Cal.3d 857, was dictum, we rejected a claim that a waiver of rights was required when a defendant admits he has suffered prior convictions where the prior convictions were simply penalty phase aggravating evidence.

### III

#### EVIDENTIARY STIPULATIONS TO PENALTY-RELATED ALLEGATIONS

█ Evidentiary stipulations have long been recognized as tactical trial decisions which counsel has discretion to make without the express authority of the client. (See *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 277 [74 Cal.Rptr. 544, 449 P.2d 760].) Counsel's authority to stipulate to evidentiary facts exists in criminal as well as civil cases. (See *People* v. *Frank* (1990) 51 Cal.3d 718, 731-732 [274 Cal.Rptr. 372, 798 P.2d 1215]; *People* v. *Reeves* (1966) 64 Cal.2d 766, 772-773 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Fisk* (1974) 50 Cal.App.3d 364, 371 [123 Cal.Rptr. 414].)

The Court of Appeal first addressed the impact of *Boykin*, *supra*, 395 U.S. 238, on evidentiary stipulations by counsel in *People* v. *Chasco* (1969) 276 Cal.App.2d 271 [80 Cal.Rptr. 667] [*Chasco*].) In *Chasco*, defendant claimed that his attorney denied him the right to confront witnesses and exceeded his authority when the attorney stipulated that a substance contained in balloons sold to an informant by defendant was heroin. Addressing the authority of an attorney to stipulate to a "crucial" fact, the Court of Appeal held that while counsel may not stipulate away his client's only interest in the litigation, *Boykin* did not affect other evidentiary stipulations. Speaking for the court, former Justice Kaus explained:

"If it really follows from *Boykin* that every purported waiver of every constitutional right must be affirmatively shown to have been personally and intelligently made by the client, it would be necessary to stop the proceedings and have a hearing on that question every time the attorney declines to cross-examine a witness or fails to object to inadmissible evidence. . . . [¶] . . . . [¶] In this case we deal with a simple stipulation of fact, not fatal to the defense or even contradictory to the defendant's position at trial. We are convinced that in such a case the Constitution does not demand affirmative demonstration that it has not been violated. Just where the line between a guilty plea and a stipulation of fact such as ours should be drawn, we need not attempt to determine. There may be stipulations of fact so destructive of the accused's position at the trial that to permit them to be made without a showing of his intelligent consent is to court reversal. This is not such a case." (276 Cal.App.2d at pp. 274-276, fns. omitted.)

In *People* v. *McCoy* (1974) 40 Cal.App.3d 854 [115 Cal.Rptr. 559], the Court of Appeal concluded that none of this court's intervening decisions cast doubt on the *Chasco* holding. In *McCoy* counsel had stipulated to the narcotic content of capsules seized from the defendant. The composition of the seized material was not critical to McCoy's defense to the charge that he offered to sell restricted drugs, but was essential to the possession offense of which he was convicted. The Court of Appeal nevertheless found no error in the trial court's acceptance of the stipulation without *Boykin-Tahl* advice and waivers. The court concluded that absent a basis for attacking the accuracy of the test or error in connection with determining the composition of the evidence, neither defendant nor defense counsel had anything to gain by refusing to stipulate. "The decision by counsel to enter into the type of stipulation here in question parallels the type of tactical decisions which counsel must make as to which witnesses to call . . . and to what extent the People's witnesses are to be cross-examined. These aspects of counsel's professional discretion do not lend themselves to the strictures attendant to a guilty plea or its equivalent." (40 Cal.App.3d at p. 859.)

In *People* v. *Stuckey, supra,* 199 Cal.App.3d 876, on which the People rely for their argument that the *Boykin-Tahl* requirements are inapplicable to a defendant's admission that he was out on bail when he committed new offenses, the court reasoned that the defendant had stipulated only to one element of the section 12022.1 enhancement, the fact that he was out on bail. Because the People would still have to prove the other elements necessary to impose the enhancement—that the defendant was guilty of the primary and secondary offenses—before the enhancement would apply, the Court of Appeal concluded that the case resembled *Chasco (supra,* 276 Cal.App.2d

271) and *McCoy* (*supra*, 40 Cal.App.3d 854) more than *Yurko* (*supra*, 10 Cal.3d 857).[6]

In the instant case, however, the Court of Appeal found itself unable to distinguish *Yurko, supra*. It concluded that the stipulation by the defendant that he was out on bail was an admission of all of the evidentiary facts necessary to imposition of the enhancement since there was nothing left for the People to prove except that he had committed the primary and secondary offenses. The stipulation was, therefore, more than a mere factual or evidentiary admission—it was tantamount to a plea of guilty insofar as the enhancement allegation was concerned and the court was required to give *Boykin-Tahl* advice and obtain waivers of his rights from the defendant.

■ We do not agree that when a section 12022.1 enhancement is alleged a stipulation to the defendant's bail or own recognizance status is tantamount to a plea of guilty, or that the *Boykin-Tahl* requirements are applicable to an evidentiary stipulation which does not admit the truth of the allegation itself or every fact necessary to imposition of the additional punishment other than conviction of the underlying offense. Unless the stipulation or admission is that broad, it does not have the definite penal consequences necessary to trigger the *Boykin-Tahl* requirements. An admission or stipulation of facts alleged in most enhancement allegations will lead to imposition of increased punishment on conviction of the underlying offense.[7] The enhancement provided by section 12022.1 differs, however, since the enhancement is not applicable if the defendant is not convicted of the primary offense. Unless he stipulates both to the bail/own recognizance element of the enhancement and that he is guilty of or has been convicted of the primary offense, his stipulation to the former will not necessarily lead to imposition of the enhanced penalties authorized by section 12022.1.

It is clear that *Boykin* does not mandate the rule adopted by the Court of Appeal. *Boykin* proceeded in three steps: 1. Recognition that "[a] plea of

[6]Conviction of the underlying offense is, of course, a necessary prerequisite to imposition of any enhancement to the term for the offense. That a defendant must be convicted of the secondary offense does not distinguish the section 12022.1 enhancement from that in *Yurko*.

[7]It is true, as Justice Arabian observes, that such evidentiary stipulations are not an admission that the allegation is true. When a defendant stipulates to the existence of a fact in controversy, however, the jury is instructed that it must regard the fact as conclusively proved. (See CALJIC No. 1.02.) Therefore, while the jury or court must still find the allegation is true, we presume that the instruction will be followed, that the jury will consider the facts conclusively proved, and that the jury will find the allegation true.

That being the case, when the stipulation admits every element of the enhancement that is necessary to imposition of the additional penalty, for purposes of *Boykin-Tahl* analysis we see no meaningful distinction between an admission of the truth of an enhancement allegation and an admission of all of the elements necessary to imposition of the additional punishment authorized by the enhancement.

guilty is more than a confession which admits that the accused did various acts; it is itself a conviction . . . ." (395 U.S. at p. 242 [23 L.Ed.2d at p. 279].) 2. Reasoning that a confession may not be admitted in evidence unless there is a " 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.' " (*Ibid.*) 3. Applying the standard for waiver of the constitutional right to counsel which the court had held (*Carnley v. Cochran* (1962) 369 U.S. 506, 516 [8 L.Ed.2d 70, 77-78, 82 S.Ct. 884]) may not be presumed from a silent record. The record must show that the defendant was offered counsel and intelligently and understandingly rejected the offer. (*Boykin, supra,* 395 U.S. at p. 242 [23 L.Ed.2d at p. 279].)

But the high court required that the record reflect the voluntary and intelligent nature of a guilty plea, not admission of a fact or facts which, if proved, would, *with proof of other facts,* support a conviction: "[A] plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." (*Boykin, supra,* 395 U.S. 238, 242-243 [23 L.Ed.2d at pp. 279-280], fn. omitted.) The court was concerned with determination of guilt of a criminal offense without trial and the danger that the guilty pleading defendant's constitutional rights might not have been adequately protected. It was unwilling to assume that representation by counsel ensured that the defendant was pleading guilty voluntarily and intelligently. That was the limit of its concern.

When a defendant who has asserted and received his right to trial, and has waived none of his constitutional rights, elects to stipulate to one or more, but not all, of the evidentiary facts necessary to a conviction of an offense or to imposition of additional punishment on finding that an enhancement allegation is true, the concerns which prompted the *Boykin* holding are not present. No Supreme Court decision in which the voluntariness of a defendant's plea was in question suggests that the court's concern in *Boykin* extended beyond the issues of voluntariness which arise when a defendant admits a charge and, as a result, no trial on his guilt or innocence of the charge is held. The court expressly acknowledged that this was the focus of its concern in *Brady v. United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463], stating: "The importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of our recent decisions in *McCarthy v. United States, supra,* and *Boykin v. Alabama,* 395 U.S. 238 (1969)." (397 U.S. at p. 749, fn. 6 [25 L.Ed.2d at p. 757].)[8]

In *Brady* itself the court emphasized the nature of a guilty plea as "a grave and solemn act to be accepted only with care and discernment . . . . [I]t is

---

[8]In *McCarthy v. United States* (1969) 394 U.S. 459 [22 L.Ed.2d 418, 89 S.Ct. 1166], the court had held that a failure to comply with Federal Rules of Criminal Procedure, rule 11 (18

the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge." (*Brady* v. *United States, supra,* 397 U.S. 742, 748 [25 L.Ed.2d 747, 756]. See also, *Henderson* v. *Morgan* (1976) 426 U.S. 637, 645 [49 L.Ed.2d 108, 114-115, 96 S.Ct. 2253] ["And clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense . . . ."].)

The federal circuits are in substantial agreement that where a defendant has pleaded not guilty and stipulates to evidentiary facts, even facts crucial to a conviction, *Boykin* and its rule 11 of the Federal Rules of Criminal Procedure counterpart are not applicable. While the stipulation must be voluntary and intelligent, it is not mandatory that the court ensure that this appears on the face of the record, and the reviewing court does not apply a test which mandates reversal if the record fails to include *Boykin-Tahl* or equivalent advice. (*Adams* v. *Peterson* (9th Cir. 1992) 968 F.2d 835, 841. See also, *United States* v. *Lyons* (1st Cir. 1990) 898 F.2d 210, 215; *United States* v. *Shuster* (9th Cir. 1984) 734 F.2d 424, 425; *United States* v. *Robertson* (5th Cir. 1983) 698 F.2d 703, 705; *United States* v. *Stalder* (8th Cir. 1982) 696 F.2d 59, 60; *Witherspoon* v. *United States* (6th Cir. 1980) 633 F.2d 1247, 1250. But see *United States* v. *Lawson* (D.C. Cir. 1982) 682 F.2d 1012, 1015 [221 App.D.C. 63], distinguishing *United States* v. *Brown* (D.C. Cir. 1970) 428 F.2d 1100, 1102-1103 [138 App.D.C. 398].)

The defendant here did not, as the Court of Appeal concluded, stipulate to all of the evidentiary facts necessary to imposition of the additional penalty provided by section 12022.1. He stipulated only that he had been released on bail when the offense charged against him was committed. Before the enhanced penalty authorized by section 12022.1 could be imposed the People not only had to prove that defendant committed the secondary offense, but also convict him or demonstrate that he had been convicted of the primary offense. Thus, defendant's stipulation that he was on bail was an ordinary evidentiary stipulation.

The Court of Appeal erred, therefore, in concluding that this stipulation was the equivalent of an admission of the truth of the enhancement allegation which called into play the *Boykin-Tahl* and *Yurko* requirements. Nothing

U.S.C.) required that the defendant be permitted to withdraw the plea. Rule 11, as amended in 1966, then provided: " 'A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily and with understanding of the nature of the charge and the consequences of the plea. . . .' " (Quoted in *McCarthy, supra,* 394 U.S. at pp. 462-463, fn. 4 [22 L.Ed.2d at p. 423].)

Rule 11 has since been revised and no longer permits automatic withdrawal of the plea, instituting instead a harmless error test. (See Fed. Rules Crim.Proc., rule 11(h), 18 U.S.C.)

in those cases obliges the court to advise a defendant of the right to jury trial, and to confrontation and cross-examination, and of the privilege against self-incrimination prior to accepting a stipulation that does no more than relieve the People of the burden of offering evidence of the existence of an element of a sentence enhancement. This is true regardless of whether the stipulation is made by counsel or by the defendant personally. Since the stipulation is not an admission of the truth of the enhancement allegation or of all the facts necessary to find the allegation true *and impose the penalty*, *Yurko*, *supra*, 10 Cal.3d 857, does not mandate that the stipulation be accompanied by *Boykin-Tahl* advice and waivers or that defendant be advised of the penal consequences of a finding that the allegation is true.

## IV

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., and George, J., concurred.

**ARABIAN, J.**—I concur in the holding that no admonitions were required here. As noted by the majority, this was merely a factual stipulation that did not admit all the elements of the enhancement. This case does not present the more difficult question whether *any* factual stipulation, even one that admits all the elements of a charge or enhancement, requires admonitions. As noted in *Boykin* v. *Alabama* (1969) 395 U.S. 238, 242 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709], a "plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." On the other hand, a factual stipulation, no matter how comprehensive, *is* only a confession that certain facts are true; the jury must still convict, or find the enhancement true.

One might also question the need to explain to a defendant during a jury trial that he or she has a right to a jury trial, or to explain the right to cross-examine witnesses after defense counsel has already cross-examined witnesses, or even the privilege against self-incrimination after the defendant hears the court tell the jury the burden of proof is entirely on the prosecution and the defendant may remain silent. What might not be obvious to a defendant about to plead guilty, and therefore necessary to explain, becomes self-evident during a jury trial. A bright-line rule that guilty pleas and admissions of the truth of enhancements require the admonitions, while factual stipulations never do, has much to commend it. Trial courts would

find the rule clear and easy to apply, and the admonitions would be given only where truly helpful.

I therefore do not join any dicta that the admonition requirement may ever extend to factual stipulations. I consider that still an open question.