Filed 8/13/14  P. v. Navarro CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAVIER CORTEZ NAVARRO,<br><br>    Defendant and Appellant. | H039681<br>(Monterey County<br> Super. Ct. No. SS120081) |

A jury convicted defendant Javier Cortez Navarro of infliction of corporal injury on a spouse or cohabitant (Pen. Code,§ 273.5, subd. (a))[1] and found true the allegation that he had suffered a prior conviction for the same offense (§ 273.5, subd. (e)(1)).  The jury also convicted defendant of contempt of court for violating a restraining order (§ 166, subd. (c)(1)) and found true the allegation that the defendant had suffered a prior conviction of contempt of court for violating a restraining order (§ 166, subd. (c)(4)).  Defendant was convicted of four misdemeanor counts of contempt of court for violating a restraining order (§ 166, subd. (c)(1)).  In a bifurcated proceeding, the trial court found true the allegations that defendant had suffered a prior "strike" conviction (§§ 667, subds. (b)–(i), 1170.12) and had served two prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to state prison for nine years and four months.

---

[1]    All undesignated statutory references are to the Penal Code in effect at the time of defendant's crimes.

1

On appeal, defendant contends: (1) CALCRIM No. 852 erroneously states the evidentiary inference to be made under Evidence Code section 1109 and violates due process because it diminishes the prosecution's burden of proving guilt; (2) there was an invalid finding of prior convictions under sections 273.5, subdivision (e)(1) and 166, subdivision (c)(4); and (3) the trial court erred in imposing a $10 fine. We conclude that the trial court erred when it failed to advise defendant of his constitutional rights and the consequences of the defense stipulation that he had previously been convicted of sections 273.5 and 166. We reverse the judgment and remand the case for further proceedings as to these prior conviction allegations. We also order the trial court to strike the $10 fine.

## I. Statement of Facts

### A. Prosecution Case

Jane Doe, defendant's wife, testified that on January 12, 2012, defendant called her from jail early in the morning and asked her to pick him up. Doe initially testified that she told him that she would not pick him up and that he was in violation of a restraining order. However, she later testified that she lied to defendant and told him that she had presents for him and that she and Lilliana Guerrero would pick him up. She did not mention the restraining order to him.[2] Doe also testified that she did not pick up defendant from jail.

Doe testified that she did not call Guerrero after defendant called her on January 12, 2012. However, Doe also testified that she called Guerrero and left a message in which she asked her to pick defendant up from jail. Doe denied telling Guerrero that she was going to get defendant "locked up."

_____

[2] A tape recording of the telephone call from jail between defendant and Doe was played for the jury.

Doe testified that defendant knocked on her door between 1:30 p.m. and 2:00 p.m. on January 12, 2012, and she asked him, "What are you doing here?" When defendant walked in, she told him to leave because she was going to call his probation officer and the police. Defendant then tried to pull a ring off of her finger, but he was unable to do so. Her finger was bruised. Defendant also grabbed her arms and bruised them. Defendant eventually threw some papers at Doe and left.

Doe did not immediately contact the police on January 12, 2012, because defendant was going to a program and she believed that he would not return. She also still cared for defendant and believed that he could change. Between January 12 and January 17, 2012, defendant called Doe at least three times. As a result of defendant's calls, Doe decided to contact the police on January 17 about defendant's conduct on January 12, 2012. Officer Alex Zamora was dispatched to Doe's apartment. He observed bruising on the back of her arms and bruising on her ring finger. He also took photos of her injuries and listened to a voice mail message.

The prosecution introduced evidence of defendant's other acts of domestic violence. On January 4, 2011, there was a restraining order against defendant. However, Doe and defendant were together that day and began arguing because defendant did not have a job. Defendant grabbed Doe's arms, shook her, pulled her hair, and knocked her down. Doe reported the incident to the police that day. When Officer Kevin Mead arrived at Doe's apartment, he observed injuries on her arms.

On November 29, 2011, defendant arrived at Doe's residence and they argued over car keys. She attempted to call the police, but defendant "unplugged" the phone. Officer Yolanda Rocha was dispatched to Doe's apartment in response to a "hang up" 911 call and contacted Doe. When Officer Rocha arrived, she observed that the phone was not damaged because Doe was using it. The officer learned that Doe had a restraining order against defendant and observed that defendant was present in the

3

apartment. After waiving his *Miranda*[3] rights, defendant told the officer that he was there to say hi to Doe and that he was aware of the restraining order. Defendant was arrested for violation of the restraining order.

Alexandra McCabe testified as an expert on domestic violence. She explained that there is commonly a "cycle of violence" in domestic violence cases. This cycle includes: the "honeymoon" period; a period in which victims experience tension or hostility from their partners; and an incident of violence. Victims of domestic violence return to their abusers an average of seven times. Victims stay in these relationships for a variety of reasons: love, cultural barriers, lack of support, religious beliefs, batterers' promises to reform, and fear. Batterers control their victims by isolating them from their families and friends, by exerting economic control, or by threatening them. Many victims "tend to report things late, not at all, or minimize." Victims frequently talk about the batterers' bad childhood or their being under pressure. Victims who have protective orders against their batterers often allow them to have contact.

The parties stipulated that on December 8, 2011, defendant was convicted of disobeying a court order in violation of section 166, subdivision (c)(1), and that on February 9, 2011, he was convicted of inflicting corporal injury on a spouse in violation of section 273.5.

### B. Defense Case

Guerrero, Doe's neighbor, testified that on January 11, 2012, Doe reminded Guerrero that she had agreed to go with Doe to pick up defendant from jail the next day. Doe also called Guerrero around 4:00 a.m. the following day and asked whether she was ready to pick up defendant. About an hour later, Guerrero drove Doe and her two daughters to the jail, picked up defendant, and drove them back home. They arrived

---

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436.

4

home around 6:00 a.m. or 6:30 a.m. Guerrero also drove Doe and defendant to the welfare office sometime after 12:00 p.m. that same day. During the drive, Guerrero noticed that both defendant and Doe had marks on their necks. Doe and defendant spent about 15 to 30 minutes at the welfare office.

Sometime between January 12 and 17, 2012, Doe told Guerrero that she intended to get defendant "locked up." Guerrero was convicted of embezzlement in 2008.

A Department of Social Services document in defendant's name had a date stamp of "January 12, 2012" on it, and a receipt for the document was issued at 1:40 p.m. on January 12. The "1:40 p.m." stamp indicated the time that the document was logged in, and not necessarily the time that defendant was present at the Department of Social Services.

Michael Robles, a retired social worker, knew defendant and Doe from his church. He had seen defendant and Doe together at a bible study group six or seven times in 2011. At approximately 11:00 a.m. on January 12, 2012, Robles was sitting in the lobby of the welfare office when defendant and Doe walked into the building. They spoke with Robles for about 30 minutes and both seemed happy. Both defendant and Doe had "hickies" on their necks. Doe told Robles that defendant had been released from jail that morning and they were there to reinstate his food stamps.

## II. Discussion

### A. CALCRIM No. 852

Defendant contends that the trial court erred when it instructed the jury pursuant to CALCRIM No. 852 that the jury could consider evidence of uncharged domestic violence for disposition.

Here, the trial court instructed the jury pursuant to CALCRIM No. 852 as follows:

5

"The People presented evidence that the defendant committed domestic violence that was not charged in this case.  Specifically, incidents described by Jane Doe during her testimony as occurring on January 4, 2011 and November 29 of 2011.

"Domestic violence means abuse committed against an adult who is a spouse. Abuse means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence.

"Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by preponderance of the evidence if you can conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.  If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit corporal injury on a spouse as charged here.

"If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of corporal injury to a spouse. The People must still prove each charge beyond a reasonable doubt.

"Do not consider this evidence for any other purpose except for the limited purpose that I just described, as well as proof of the prior convictions for corporal injury on a spouse as alleged in the special allegation related to Count Number 1 and proof of

6

the prior conviction for a violation of a court order as alleged in the special allegation related to Count 3."

Though defendant did not object to this instruction, section 1259 permits this court to "review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." We will review the merits of defendant's challenge to CALCRIM No. 852.

Defendant argues that CALCRIM No. 852 misstated the evidentiary inference to be made under Evidence Code section 1109. He claims that "[a]lthough the statute simply states the evidence is not inadmissible under Evidence Code section 1101, the instruction goes further, directing the jury that it may draw an inference that the 'defendant was disposed or inclined to commit domestic violence.'"

"Statutory construction begins with the plain, commonsense meaning of the words in the statute, '"because it is generally the most reliable indicator of legislative intent and purpose."' [Citation.] 'When the language of a statute is clear, we need go no further.'" (*People v. Manzo* (2012) 53 Cal.4th 880, 885.)

Evidence Code section 1109, subdivision (a)(1) states that ". . . in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." Evidence Code section 1101 provides in relevant part: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Though Evidence Code section 1109 does not refer to disposition, when this instruction is read together with Evidence Code section 1101, it authorizes the admission of evidence of the defendant's commission of other domestic

7

violence to prove his or her conduct on a specific occasion, that is, his or her disposition to commit the charged offense.

Evidence Code section 1109 does not violate a defendant's right to due process. (*People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1096.) Given that Evidence Code section 1109 authorizes the admission of evidence of prior acts of domestic violence to show disposition, the issue then becomes how the jury may use such evidence in determining the defendant's culpability of the charged offenses without violating his or her due process rights.

In *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*), the California Supreme Court approved CALJIC No. 2.50.01, which is analogous to CALJIC No. 2.50.02, the prior instruction on Evidence Code section 1109 evidence. The instructions are identical except CALJIC No. 2.50.01 refers to "sexual offense" and CALJIC No. 2.50.02 refers to "domestic violence." In *Reliford,* the court held that CALJIC No. 2.50.01 correctly stated the law regarding the limited purpose for which the jury may consider the prior offenses and the prosecution's burden of proof. (*Reliford*, at pp. 1012–1013, 1016.) Courts of Appeal have determined that *Reliford* applies to CALCRIM No. 852. (*People v. Johnson* (2008) 164 Cal.App.4th 731, 740-741; *People v. Reyes* (2008) 160 Cal.App.4th 246, 252-253.)

Defendant acknowledges that *Reliford* concluded that disposition is a reasonable inference from the evidence of other acts of domestic violence, but he claims that "it is not the only inference that the jury can make from the evidence, and it may make other inferences from [Evidence Code] section 1109 evidence without finding it probative to disposition." Defendant does not identify what other inferences might have been drawn from the domestic violence evidence in the present case. In any event, CALCRIM No. 852 merely instructs the jury that it "may" draw an inference of a defendant's disposition to commit domestic violence and, based on that decision, that he was likely to

8

commit the charged offense of corporal injury on a spouse. The use of "may" indicates to the jury that it was free to draw other inferences from this evidence.

Relying on *People v. James* (2000) 81 Cal.App.4th 1343 (*James*), defendant contends that the instruction proposed in *James* "better tracks the language of Evidence Code section 1109 and does not draw undue emphasis on the defendant's disposition." In *James*, the trial court gave the pre-1999 version of CALJCI No. 2.50.02. (*James*, at pp. 1349-1350.) *James* found error in instructions "suggesting that a defendant's prior offenses may be sufficient to convict him of the charged crime." (*James*, at pp. 1353, 1363.) We first note that no such infirmity is present in CALCRIM No. 852, which instructs the jury that if it concluded that the defendant committed the uncharged domestic violence, this was "only one factor to consider along with all the other evidence" and was "not sufficient by itself to prove that the defendant [was] guilty" of the charged offense. (CALCRIM No. 852.)

Defendant also cites to dicta in a footnote in *James*, *supra*, 81 Cal.App.4th 1343 in which the Court of Appeal acknowledged that the 1999 amended version of CALJIC No. 2.50.01 was "an improvement" over the earlier version, but it went on to opine that "to the degree it still suggests other offense evidence is relevant only to infer guilt from propensity, we believe the instruction simultaneously overstates and unduly limits the use of such evidence. The *Falsetta* court acknowledged that other crimes evidence may be considered for a variety of purposes 'such as establishing defendant's motive, intent, or identity (if those issues remain contested), or bolstering the young victim's credibility.' [Citation.] We believe an instruction in general terms would be more appropriate, leaving particular inferences for the argument of counsel and the jury's common sense. At a minimum, deleting the words 'and did commit' from the standard instruction would remedy many of the concerns addressed above." (*James*, at p. 1357, fn. 8.) This dicta lacks precedential value (see e.g., *People v. Macias* (1997) 16 Cal.4th 739, 743) and at most criticizes the instruction rather than invalidating it. Thus, though the commentary to

9

CALCRIM No. 852 references both the *James* rationale and its proposed alternative language, we are not persuaded that the trial court erred in instructing the jury pursuant to CALCRIM No. 852. Since CALCRIM No. 852, as given in the present case, expressly limits how the jury may consider other evidence of domestic violence, we find no due process violation.

Defendant also argues that CALCRIM No. 852 violated due process, "because it diminished the prosecution's burden of proving guilt of the charge[d] crimes beyond a reasonable doubt." As previously stated, *Reliford*, *supra*, 29 Cal.4th at pp. 1012-1015 rejected the defendant's contention that CALJIC No. 2.50.01 was " 'likely to mislead the jury concerning . . . the prosecution's burden of proof.' " This court is bound by *Reliford*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## B. Validity of Findings of Prior Convictions

Defendant next contends that the trial court erred by failing to advise him of his *Boykin-Tahl*[4] rights prior to accepting the stipulation that he had suffered prior convictions within the meaning of sections 273.5, subdivision (e)(1) and 166, subdivision (c)(4).

Here, the prosecution charged defendant in count one of infliction of corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)). A conviction for violating section 273.5, subdivision (a) is punishable "by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment." The prosecution also alleged that defendant had a prior conviction on February 9, 2011, for the same offense pursuant to section 273.5, subdivision (e)(1). A defendant who is convicted of violating section 273.5, subdivision (a) "within seven years of a previous conviction under

---

[4]     *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*).

subdivision (a) . . . shall be punished by imprisonment in a county jail for not more than one year, or by imprisonment in the state prison for two, four, or five years, or by both imprisonment and a fine of up to ten thousand dollars ($10,000)."  (§ 273.5, subd. (e)(1).)

The prosecution charged defendant in count three of contempt of court for violating a restraining order after a conviction involving an act of violence (§ 166, subd. (c)(4)).  It was also alleged that defendant had been convicted of violating section 166, subdivision (c)(1) within seven years of the charged offense.  A conviction for violating section 166, subdivision (c)(1) is a misdemeanor which is "punishable by imprisonment in a county jail for not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine."  When a defendant is convicted of violating section 166, subdivision (c)(1), within seven years of an identical conviction, and the second or subsequent conviction involves an act of violence or "'a credible threat'" of violence, punishment is "imprisonment in a county jail not to exceed one year, or in the state prison for 16 months or two or three years."  (§ 166, subd. (c)(4).)

Defendant's motion to bifurcate the fact of the prior convictions was denied.

During trial, the parties entered into a stipulation and the trial court instructed the jury:  "Stipulation means the parties have agreed that certain evidence does exist.  So rather than bringing in witnesses or testimony or physical evidence, they've agreed that these convictions; that the defendant was convicted of a 166(c)(1) on December 8th of 2011 and convicted of a violation of Penal Code Section 273.5 on February the 9th of 2011.  [¶]  That information will become relevant when you are deliberating in this case. . . .  There's no objection by the defense.  They are not arguing that they do not exist."

The trial court also instructed the jury:  "If you find the defendant guilty of the crimes alleged in Counts 1 and 3 -- and 1 is the 273.5, inflicting corporal injury on a spouse or cohabitant.  And 3 is the violation of the court order, the 166(c)(4).  There is also a special allegation attached to each of those.  [¶]  So if you find the defendant guilty

11

of the crimes charged in Counts 1 and 3, you must also decide whether the People have proved the additional allegation that the defendant was previously convicted of other crimes. [¶] It has already been determined that the defendant is the person named in the stipulation entered into by the parties. You must decide whether the evidence proves that the defendant was convicted of the alleged other crimes based on that stipulation. [¶] The People allege that the defendant has been convicted of, one, a violation of 273.5 on . . . February 9th of 2011 in the superior court of Monterey County in case MS292717A. That relates to Count 1. . . . [¶] . . . [¶] The People allege that the defendant has been convicted of a violation of Penal Code Section 166(c)(1) on December 8th of 2011 in the superior court of Monterey County in case MS300979A. [¶] You must consider each of these alleged convictions separately. The People have the burden of proving each alleged conviction beyond a reasonable doubt. If the People have not met this burden for any alleged conviction, you must find that the alleged conviction has not been proved."

The jury convicted defendant of the count 1 charge that he inflicted corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)), and found true the allegation that he had a prior conviction for the same offense (§ 273.5, subd. (e)(1)). As to count 3, the jury convicted defendant of contempt of court for violating a restraining order (§ 166, subd. (c)(1)) and found true the allegation that the defendant had suffered a prior conviction of contempt of court for violating a restraining order (§ 166, subd. (c)(4)).

Prior to accepting a criminal defendant's guilty plea, a trial court must advise him of the constitutional rights to a jury trial, to confront accusers, and against compulsory self-incrimination, and obtain the defendant's express waivers of these rights. (*Boykin*, *supra*, 395 U.S. at p. 243; *Tahl*, *supra*, 1 Cal.3d at pp. 132-133.) *In re Yurko* (1974) 10 Cal.3d 857 (*Yurko*) extended this rule to cases in which the trial court accepts a defendant's admission that he has suffered prior felony convictions. (*Id.* at p. 863.) *Yurko* also imposed additional admonitions "as a judicially declared rule of criminal

12

procedure" that the trial court advise the defendant: (1) he might be adjudged an habitual criminal if applicable to his case; (2) "of the precise increase in the term or terms which might be imposed, if any, in the accused's case pursuant to . . . applicable statutes [citation];" and (3) of the effect on eligibility for parole. (*Id.* at p. 864.)[5]

Moreover, advisement and waiver requirements are not limited to a defendant's guilty plea or admission to a prior conviction. *In re Mosley* (1970) 1 Cal.3d 913 held that when defense counsel's stipulation to submit the case on the transcript of the preliminary examination is "tantamount to a plea of guilty," the stipulation "must be accompanied by an affirmative showing on the record that the defendant waives his right to freedom from compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." (*Id.* at p. 926, fn. 10.) In *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, the California Supreme Court stated that it used the phrase " 'tantamount to a plea of guilty ' " in *Mosley* "to explain [the] extension of the *Boykin-Tahl* requirements to submissions in which the guilt of the defendant was apparent on the basis of the evidence presented at the preliminary hearing and in which conviction was a foregone conclusion if no defense was offered." (*Bunnell*, at p. 602.)

Claims that a stipulation also triggers *Boykin-Tahl* and *Yurko* requirements were considered in *People v. Adams* (1993) 6 Cal.4th 570 (*Adams*) and *People v. Newman* (1999) 21 Cal.4th 413 (*Newman*). In *Adams*, the prosecution alleged an enhancement that the defendant had committed some of his offenses while he was released from custody (§ 12022.1). (*Adams*, at p. 574.) The defendant stipulated that when the alleged offenses were committed, he was out of custody on bail on his own recognizance. (*Ibid.*) On appeal, the defendant argued that his stipulation was void because the trial court had

---

5       The issue of whether the trial court erred by failing to advise the defendant in accordance with *Yurko*, *supra*, 10 Cal.3d 857 before accepting the stipulation that the defendant had a prior conviction for an offense that exposed him to a greater sentence under section 273.5 is currently pending before the California Supreme Court in *People v. Cross*, review granted October 2, 2013, S212157.

13

not complied with *Boykin-Tahl* requirements. (*Adams*, at p. 575.) *Adams* concluded that *Boykin-Tahl* requirements were not applicable to an evidentiary stipulation which did "not admit the truth of the allegation itself or every fact necessary to imposition of the additional punishment other than conviction of the underlying offense." (*Adams*, at p. 580.) *Adams* observed that the section 12022.1 enhancement allegation differed from most enhancement allegations because it did not apply unless the defendant was convicted of the primary offense. (*Adams*, at p. 580.) Thus, since the defendant did not stipulate to all elements of the enhancement allegation, *Yurko* did not require *Boykin-Tahl* advice and waivers or that the trial court advise the defendant of the penal consequences if the allegation was found to be true. (*Adams*, at p. 582.)

In *Newman*, *supra*, 21 Cal.4th 413, the prosecutor charged the defendant with being a felon in possession of a firearm (§ 12021) and alleged six prior felony convictions enhancements. (*Newman*, at p. 416.) Trial on the section 12021 charge and enhancement allegations was bifurcated. (*Newman*, at p. 416.) Before trial on the substantive charge, defense counsel stipulated to the defendant's status as a felon. (*Ibid.*) On appeal, the defendant argued that the stipulation was invalid because the trial court had failed to advise him of any rights or obtain any waivers in accordance with *Boykin-Tahl* and *Yurko*. (*Newman*, at pp. 417-418.) Relying on *Adams*, *supra*, 6 Cal.4th 570, *Newman* rejected defendant's argument because he had not stipulated to all of the evidentiary facts necessary for his conviction. (*Newman*, at pp. 422-423.)

In *People v. Little* (2004) 115 Cal.App.4th 766 (*Little*), this court distinguished stipulations that directly result in penal consequences from those in *Adams* and *Newman*. In *Little*, the defendant was charged with child endangerment and various drug offenses, including Health and Safety Code section 11550. (*Little*, at p. 769.) Prior to trial, the defendant stipulated that he "was under the influence of a controlled substance, methamphetamine, in violation of Health and Safety Code section 11550(A)," and this stipulation was read to the jury. (*Little*, at p. 772.) *Little* concluded that since the

14

defendant's stipulation covered all facts required for conviction and punishment and thus was tantamount to a guilty plea, the trial court was required to give *Boykin-Tahl* admonitions. (*Little*, at pp. 775, 776-778.)

Here, defendant was subject to enhanced punishment under section 273.5, subdivision (e)(1) if the prosecution proved that he had suffered an enumerated offense, including a prior conviction under section 273.5, subdivision (a), and that the conviction occurred within the past seven years. Similarly, defendant was subject to enhanced punishment under section 166, subdivision (c)(4) if the prosecution proved that he had suffered a prior conviction for violating a restraining order within the past seven years. Like *Little*, and unlike *Adams* and *Newman*, the stipulation in the present case covered all evidentiary facts required for the jury to find true the prior conviction allegations. In effect, the stipulation was an admission to the truth of both prior conviction allegations. Under *Yurko*, a prior conviction cannot be admitted by a defendant unless the trial court advises the defendant of his or her rights and the consequences of the admission. Thus, here, defendant was entitled to advisements in accordance with *Boykin-Tahl* and *Yurko* before stipulating to his prior convictions of sections 273.5 and 166.

Relying on *People v. Witcher* (1995) 41 Cal.App.4th 223 (*Witcher*) and *People v. Tardy* (2003) 112 Cal.App.4th 783 (*Tardy*), the Attorney General argues that "[a] prior conviction for domestic violence and a prior conviction for disobeying a protective or stay-away order are only sentencing factors to which the requirement of advisements and waiver does not apply . . . ."

In *Witcher*, *supra*, 41 Cal.App.4th 223, the defendant was charged with two counts of petty theft with a prior conviction (§ 666). (*Witcher*, at p. 226.) Prior to trial, defendant admitted the two prior convictions for purposes of section 666. (*Witcher*, at p. 226.) On appeal, defendant argued, among other things, that his admission of the two prior convictions was not voluntary and intelligent. (*Ibid.*) Relying on *People v. Bouzas* (1991) 53 Cal.3d 467, which had held that the prior conviction and incarceration

15

requirement of section 666 was not an element of the crime and thus the defendant had the right to stipulate to this requirement, *Witcher* concluded that the defendant's "admission" or stipulation did not require advisements and waivers. (*Witcher*, at pp. 233-234.) *Witcher* reasoned: "Appellant has cited no authority for the proposition that a defendant must be admonished about his constitutional rights when he enters into such a self-serving stipulation, and we decline to create such authority. He has received the benefit of his bargain. The prosecution was not allowed to prove his prior felony convictions and incarcerations before the jury. We will not now countenance an after-the-fact contention that his stipulation did not meet minimum constitutional standards." (*Id.* at p. 234.) Here, in contrast to *Witcher*, defendant's stipulation did not prevent the jury from hearing that he had previously been convicted of sections 273.5 and 166. Moreover, there was no discussion in *Bouzas* regarding admonitions and waivers.

Nor are we persuaded by the Attorney General's reliance on *Tardy*, *supra*, 112 Cal.App.4th 783 in which the Court of Appeal determined that section 666 was not an "'enhancement' because it [did] not add to the base term." (*Tardy*, at p. 787, fn. 2, citing Cal. Rules of Court, rule 4.405(c).) Like section 666, sections 273.5, subdivision (e)(1) and 166, subdivision (c)(4) are not enhancements. However, *Yurko* made no distinction between the different types of prior convictions, that is, whether they constitute enhancements or sentencing factors that authorize the trial court to employ an alternate sentencing scheme. Accordingly, we conclude *Yurko* is controlling in the present case.

The lack of advisement of each of the *Boykin–Tahl* rights and penal consequences as well as the defendant's waiver of his rights constitute reversible error unless "the record affirmatively shows that [the stipulation] is voluntary and intelligent under the totality of the circumstances." (*People v. Howard*, *supra*, 1 Cal.4th at p. 1175.) Here, there is nothing in the record to show that defendant's stipulation was voluntary and intelligent under the totality of the circumstances. Accordingly, the judgment is reversed.

16

## C. Local Crime Prevention Fine

Defendant contends, and the People concede, that the local crime prevention fine of $10 must be stricken.

Section 1202.5, subdivision (a) provides in relevant part:  "In any case in which a defendant is convicted of any of the offenses enumerated in Section 211, 215, 459, 470, 484, 487, 488, or 594, the court shall order the defendant to pay a fine of ten dollars ($10) in addition to any other penalty or fine imposed."

Here, defendant was acquitted of the charge in count 2 of residential burglary (§§ 459, 460, subd. (a)).  Defendant was neither charged nor convicted of any other offense that subjected him to the fine under section 1202.5.  Though defendant did not object to imposition of this fine, it was unauthorized and thus can be corrected at any time.  (*People v. Scott* (1994) 9 Cal.4th 331, 354.)  Thus, this fine must be stricken.

17

### III. Disposition

The judgment is reversed and remanded for further proceedings regarding the sections 273.5 and 166 prior conviction allegations.  The trial court is also directed to strike the $10 fine imposed pursuant to section 1202.5, subdivision (a).

 

_____
Mihara, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Grover, J.