Filed 5/28/15  P. v. Martinez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM STANLEY MARTINEZ,<br><br>    Defendant and Appellant. | B253219<br><br>(Los Angeles County<br>Super. Ct. No. BA406347) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed in part and reversed in part.

Katharine J. Galston, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant William Stanley Martinez appeals from the judgment entered following his convictions by jury on two counts of assault with a deadly weapon upon a peace officer (counts 1 & 2), count 3 – evading an officer with willful disregard, and count 4 – unlawful driving or taking of a vehicle, with a court finding he committed the offense while released on bail. (Pen. Code, §§ 245, subd. (c), 12022.1, subd. (b); Veh. Code, §§ 2800.2, subd. (a), 10851, subd. (a).) The court sentenced appellant to prison for eight years four months. We affirm the judgment in part and reverse it in part.

*FACTUAL SUMMARY*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence (the sufficiency of which as to counts 3 and 4 is undisputed) established that on January 1, 2013, shortly after midnight, uniformed Los Angeles Police Officers Robert Smith and Brent Williams were in their marked patrol car in a residential area near 43rd and Menlo. Smith was driving.

The officers observed appellant driving a Honda Accord north on Menlo. Appellant committed various speeding and other Vehicle Code violations. Smith followed the Honda and later activated the patrol car's forward-facing red and blue lights to conduct a traffic stop. A few seconds later, appellant stopped on Figueroa south of Martin Luther King (King). However, appellant later sped away and a lengthy, high-speed pursuit ensued to 54th and Figueroa. Other officers and a police helicopter joined the pursuit, and the helicopter illuminated the Honda. During the pursuit, the above red and blue lights of Smith's patrol car, and its siren, were operating, as were the lights and sirens of other police cars. Appellant evaded officers with willful disregard (count 3), committing additional speeding and traffic violations and driving recklessly. Appellant was also unlawfully driving or taking the Honda in violation of Vehicle Code section 10851, subdivision (a) (count 4).

At 54th Street and Figueroa, appellant crashed into a fence. Smith stopped a few feet directly behind the Honda. Appellant could not back up without hitting the patrol car. As Smith and Williams began exiting, appellant drove the Honda in reverse and it collided into the front of the patrol car. Smith testified appellant "came back really hard," resulting in a "very hard impact." Williams testified the collision of the Honda into the patrol car caused a "pretty good jolt" and was loud like any car collision. The collision dented the front of the patrol car.

As a result of the collision of the Honda into the patrol car, Smith suffered a contusion to his left shin and was treated that night at a hospital. Smith's left leg hurt for a "couple of weeks" and it was visibly bruised for a few weeks. At the time of the collision, Williams's right leg was outside the car. As a result of the collision, Williams's right leg was injured, and he experienced "a lot of pain" in that leg. Williams was treated that night at the hospital. Most of his pain was in his right leg and, at the time of his September 18, 2013 trial testimony, he was still experiencing pain in his right leg. Williams experienced pain in his neck and back after the incident, but also had experienced pain in those areas before the incident.

After the Honda collided with the patrol car, appellant drove away, the pursuit continued, but appellant was eventually apprehended. A camcorder on Smith's patrol car recorded the entire pursuit. The resulting video (including audio) was admitted into evidence at trial. Appellant presented no defense evidence.

## ISSUES

Appellant claims (1) Smith's direct examination testimony concerning appellant's state of mind was inadmissible and (2) the trial court erred by imposing the Penal Code section 12022.1 enhancement.

## DISCUSSION

1. *No Prejudicial Testimonial Error Occurred.*

Appellant had two jury trials.[1] At the second jury trial on counts 1 and 2, the following occurred during the prosecutor's September 18, 2013 direct examination of Smith: "Q  Could you describe how you perceived or how you feel when the Honda hit your car? [¶] A  I perceived he did it on purpose in that -- [¶] [Defense Counsel]: Object as speculation, your Honor." (*Sic.*) The court overruled the objection and ruled the testimony was lay opinion. Smith then testified without further objection, "I believed that he was trying to disable my car so he could get away."

During cross-examination, Smith testified, inter alia, the Honda "came back on purpose." The following later occurred: "Q  So you know he was reversing on purpose, but you don't know if he was reversing to hit your car? [¶] A  I can't say that." Appellant's counsel later asked if it looked like appellant was turning to make room *to get away*, and Smith replied, "If you want to ask my opinion, my opinion is that a tactic a lot of guys who are trying to escape is [*sic*] *to disable our vehicle* by ramming our vehicle *and then* continue on. [¶] That's a tactic that's been used in the past and used quite often actually." (Italics added.)

The following then occurred: "Q  You don't know whether that's what was going through [appellant's] mind? [¶] A  Correct, sir. I couldn't tell you that. [¶] Q  You're speculating in regards to that? [¶] . . . [¶] A  You asked me what I believed he was doing and I said because of the tactics that have been used against us that suspects ram our vehicles to disable it so they can get away. [¶] Q  Once again, you don't know that that's what he was doing? [¶] A  No, I do not. [¶] Q  It looked to you that he was making room *to try to continue to get away*, correct? [¶] A  . . . He was *trying to disable my vehicle* because he could have [come] back a lot slower. He didn't have to come back that fast." (Italics added.)

---

[1]     On July 17, 2013, a jury deadlocked on counts 1 and 2 and the court granted a mistrial on those counts. The vote as to each count was 11 to 1 for conviction. The jury convicted appellant on counts 3 and 4.

The following also occurred: "Q  And now you're testifying that he was intentionally or purposely hitting you to disable your car?  Is that what you believe now?  [¶]  A  I didn't say that.  You asked me what was my opinion and I said the tactics that's commonly used.  I didn't have much time to think about exactly what he was doing when he did it.  I just said because of the tactics that's been used from people trying to flee officers is to ram to disable them and continue on." (*Sic*.)

The court, using CALCRIM No. 860, instructed the jury on assault with a deadly weapon on a peace officer.[2]  The prosecutor did not, during jury argument, refer to any direct or cross-examination testimony by Smith that appellant hit the patrol car purposely or to disable it.  During jury argument, appellant's counsel commented Smith's testimony

---

[2]     CALCRIM No. 860 stated, in relevant part, "The defendant is charged in Counts One and Two of the Information with Assault with a Deadly Weapon on a Peace Officer in violation of Penal Code section 245(c).  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1.  The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person;  2.  The defendant did that act willfully;  [¶]  3.  When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;  [¶]  4.  When the defendant acted, he had the present ability to apply force with a deadly weapon to a person;  [¶]  5.  When the defendant acted, the person assaulted was lawfully performing his duties as a peace officer;  [¶]  AND  [¶]  6.  When the defendant acted, he knew, or reasonably should have known, that the person assaulted was a peace officer who was performing his duties.  [¶]  Someone commits an act *willfully* when he or she does it willingly or on purpose. . . .  [¶]  The terms *application of force* and *apply force* mean to touch in a harmful or offensive manner.  The slightest touching can be enough if it is done in a rude or angry way.  Making contact with another person, including through his or her clothing, is enough.  The touching does not have to cause pain or injury of any kind.  [¶]  The touching can be done indirectly by causing an object to touch the other person.  [¶]  The People are not required to prove that the defendant actually touched someone.  [¶]  The People are not required to prove that the defendant actually intended to use force against someone when he acted.  [¶]  No one needs to actually have been injured by defendant's act.  But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was.  [¶]  A *deadly weapon* is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

5

that "the car was reversing . . . as a tactic to disable [the] [patrol] car" was "absolutely ridiculous," assumed Smith could "get into the head" of appellant, and was speculation.

On September 19, 2013, jury deliberations commenced, and the jury deliberated a little less than two hours. At 10:23 a.m. on September 20, 2013, the jury resumed deliberations. At 11:44 a.m., the jury submitted three questions to the court but continued deliberating. The first was, "What is assault?" The second was, "What type of assault are we using in this charge?" The third was, "Is the 'assault' in this case required to be intentional or not?" At noon, the jury recessed for lunch. At 1:30 p.m., the jury resumed deliberations. At 1:49 p.m., the court advised the jury CALCRIM No. 860 answered the jury's questions, and the court reread the instruction to the jury. The court told the jury to notify the court if the jury needed additional clarification. At 1:52 p.m., the jury resumed deliberations. The jury posed no other questions to the court. At 1:57 p.m., the jury announced it had reached verdicts on counts 1 and 2.

Appellant claims the trial court prejudicially erred by permitting Smith to testify on direct examination (1) Smith perceived appellant hit the patrol car "on purpose" and (2) Smith "believed that [appellant] was trying to disable [Smith's] car so [appellant] could get away."

"Generally, a lay witness may not give an opinion about another's state of mind. However, a witness may testify about objective behavior and describe behavior as being consistent with a state of mind." (*People v. Chatman* (2006) 38 Cal.4th 344, 397.) Smith's testimony appellant hit the patrol car "on purpose" and Smith's testimony appellant was "trying to" disable the car constituted inadmissible lay opinion about appellant's state of mind.

It does not follow we must reverse the judgment. Appellant concedes the error must be reviewed for prejudice under the standard enunciated in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). For the reasons below, we conclude no prejudicial error occurred. First, much of any damage from testimony by Smith about appellant's purpose in hitting the patrol car and/or whether appellant was trying to disable it was self-inflicted. *Appellant*, during cross-examination, repeatedly elicited testimony from Smith

6

that appellant tried to disable the patrol car. Proper cross-examination does not extend to matters improperly admitted on direct examination. (*People v. Steele* (2002) 27 Cal.4th 1230, 1271.)

Second, other portions of Smith's testimony underscored he was not purporting to testify as to appellant's state of mind, as when (1) Smith suggested he could not say if appellant was reversing to hit the patrol car, (2) Smith indicated he did not know, and could not tell appellant's counsel, what was going on in appellant's mind, and (3) Smith denied he had said appellant intentionally or purposely hit Smith to disable Smith's car.

Third, evidence was presented Smith and Williams, other officers, and a helicopter providing illumination were involved in the pursuit. During the pursuit, the siren on Smith's patrol car was operating. Appellant apparently saw the patrol car's red and blue lights when Smith activated them a few seconds before appellant stopped during the traffic stop on Figueroa near King. Those same lights were operating, at night, when Smith drove up behind appellant's Honda after it crashed at 54th Street and Figueroa. Smith drove up directly behind the Honda, within a few feet from it, and there was evidence appellant could not have backed up without hitting the patrol car. The jury viewed the video of the pursuit, including the collision of the Honda into Smith's patrol car. This court has viewed the video as well.

Appellant concedes Smith saw the Honda go "quickly into reverse," "back up fast" and collide with the patrol car "with a hard impact." Appellant also concedes the collision resulted in a "big jolt" to the patrol car. After appellant backed up and struck the Honda, he did not stop or express surprise or concern to the officers that he had collided into the patrol car; he continued fleeing. There was strong evidence, independent of Smith's challenged direct examination testimony, that appellant purposely hit the patrol car and was trying to disable it.

Fourth, appellant was not charged with "battery" with a deadly weapon, but with assault with a deadly weapon. Appellant backed his car quickly towards the patrol car. During jury argument, appellant's counsel (distinguishing between assault and criminal negligence) conceded a car was a "massive hunk of steel. We all know that." The jury,

7

based on the evidence, reasonably could have inferred appellant, when backing up towards the patrol car, knew where it was behind him.

There is no dispute CALCRIM No. 860 (see fn. 2, *ante*) correctly stated the elements of counts 1 and 2. Whether or not the Honda struck the patrol car, there was strong evidence appellant committed assault with a deadly weapon upon a peace officer (counts 1 and 2) when appellant began backing the Honda *towards* the patrol car. The fact there was substantial evidence appellant rammed the patrol car, resulting in significant injuries to Smith and Williams, merely provided additional evidence of said assault with a deadly weapon. Although the fact or extent of injury is not controlling, we note that if, after appellant struck the patrol car in the above circumstances, the patrol car had struck Smith and/or Williams in the head, a more tragic result might have occurred.

Fifth, the court, using CALCRIM No. 333, told the jury it could, "but [was] not required to" accept nonexpert opinion, and told the jury it could disregard all or any part of an opinion the jury found unbelievable, unreasonable, or unsupported by evidence. We presume the jury followed the court's instructions. (Cf. *People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Sixth, the prosecutor did not, during jury argument, refer to any testimony by Smith that appellant purposely hit the patrol car or was trying to disable it. On the other hand, the jury heard appellant's argument the challenged testimony was

8

ridiculous.[3]  No prejudicial error resulted from Smith's challenged direct examination testimony.  (Cf. *Watson, supra*, 46 Cal.2d at p. 836.)

2. *The Court Erred by Imposing the Penal Code Section 12022.1 Enhancement.*

The information alleged that at the time of the offenses alleged in counts 1 through 4, appellant was released from custody on bail or on his own recognizance in case No. BA404105 for purposes of the Penal Code section 12022.1 allegation (hereafter, the bail allegation).  On July 10, 2013, the information was amended to add case No. BA405412 to the bail allegation and the parties agreed to bifurcate the trial on the bail allegation.  On July 17, 2013, appellant waived any right he had to a jury trial on the bail allegation (we comment *post* on whether he had such a right), and appellant's counsel joined in the waiver.  The People waived any right they had to a jury trial.  Subsequently, the jury convicted appellant on counts 3 and 4 but deadlocked on counts 1 and 2, and the court granted a mistrial on counts 1 and 2.  The court discharged the jury and continued the case to August 9, 2013.

---

[3]  Appellant argues the fact Smith's challenged direct examination testimony was allegedly not presented during the first trial (in which the jury deadlocked on counts 1 and 2) demonstrates the prejudicial effect of that testimony here.  Given our previous discussion of the numerous factors militating against the conclusion there was prejudice, we reject appellant's argument.  Appellant argues the content of the jury's three questions to the court demonstrates the challenged testimony was prejudicial.  We disagree.  The questions did not expressly refer to the issues of whether appellant purposely hit the car or tried to disable it, and were consistent with a jury seeking clarification for purposes unrelated to the challenged testimony.  We note the jury did not ask further questions after the court invited the jury to do so, if it had any, after the court reread CALCRIM No. 860.  Appellant argues the fact the first jury deadlocked on counts 1 and 2 demonstrates prejudice here.  However, the significance of the hung jury is diminished by the fact the vote in the first trial was 11 to 1 for conviction.  (See *People v. Christensen* (2014) 229 Cal.App.4th 781, 799.)

On August 9, 2013, the prosecutor stated "all [she] would be submitting" on the bail allegation was a minute order. Later that day, at the court trial on the bail allegation, the People proffered a minute order in case No. BA404105 pertaining to a violation of Health and Safety Code section 11350 and reflecting that in November 2012 in that case, appellant had been released on bail. Appellant posed authentication objections to the minute order and argued it was insufficient evidence. The court took judicial notice of the minute order and found true the bail allegation in the present case. At said court trial, neither the court nor the parties referred to case No. BA405412.

During the above July 17 and August 9, 2013 proceedings, Judge Richard S. Kemalyan presided. Following the retrial on counts 1 and 2, a jury, on September 20, 2013, convicted appellant on those counts in the present case (superior court case No. BA406347). Judge Henry J. Hall presided over said jury trial.

A minute order in case No. BA404105 reflects that on September 23, 2013, the court in that case (Judge Ronald H. Rose) granted the People's Penal Code section 1382 motion to dismiss that case, which alleged violations of Health and Safety Code sections 11350, subdivision (a) and 11377, subdivision (a).

The abstract of judgment in the present case (superior court case No. BA406347) is also the abstract of judgment in case No. BA405412. Said abstract reflects that in case No. BA405412, appellant, in 2012, carried a concealed firearm on his person in violation of Penal Code section 25400, subdivision (a)(2), and, on September 23, 2013, appellant was convicted of that offense by plea. During the December 3, 2013 sentencing hearing in the present case (Judge Hall presiding), the court acknowledged case No. BA404105 had been dismissed. Nonetheless, appellant's total prison sentence in the present case included two years for the bail enhancement.

Appellant claims the trial court erred by imposing the Penal Code section 12022.1, subdivision (b) bail enhancement.[4] We agree. Appellant is essentially challenging the sufficiency of the evidence supporting the true finding as to the bail allegation.[5] (See *People v. Johnson* (2012) 208 Cal.App.4th 1092, 1097-1098 (*Johnson*).) There is no dispute the section 12022.1 bail enhancement could be imposed in this case only if appellant's offense of carrying a concealed firearm (hereafter, carrying) in case No. BA405412 was the "primary offense," and the present offenses were the "secondary offense[s]," within the meaning of subdivision (b).[6]

However, at the August 9, 2013 court trial in this case on the bail allegation, neither the court nor the parties ever referred to the carrying offense or case No. BA405412, and the trial court's true finding on the bail allegation was based solely on case No. BA404105, a case later dismissed. Respondent concedes that (assuming

---

[4] Penal Code section 12022.1, subdivision (b), states, "Any person arrested for a secondary offense that was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years, which shall be served consecutive to any other term imposed by the court."

[5] Appellant, in his reply brief, argues the bail allegation was based on case No. BA405412; the People knew they "had to introduce sufficient evidence" to sustain the enhancement based on that case, even absent an objection from appellant; the People "failed to do so"; and "an objection on the ground of insufficiency of the evidence is not required in a criminal case to challenge the sufficiency of evidence supporting an enhancement on appeal."

[6] There is no dispute that no offense alleged in case No. BA404105, including the alleged violation of Health and Safety Code section 11350, can be the "primary offense" for purposes of the bail enhancement in this case. As mentioned, on September 23, 2013, the court in case No. BA404105 dismissed that case pursuant to Penal Code section 1382, i.e., appellant was not convicted in that case. "[S]ection 12022.1 on-bail enhancements are not *imposed* unless the defendant is ultimately *convicted* of the '*primary*' and 'secondary' offenses. ([Pen. Code] § 12022.1, subd. (d).)" (*People v. McClanahan* (1992) 3 Cal.4th 860, 869, second and third italics added.) The section 12022.1 "enhancement is not applicable if the defendant is not convicted of the primary offense." (*People v. Adams* (1993) 6 Cal.4th 570, 580.)

11

appellant has not forfeited his appellate challenge to the bail enhancement), the appropriate "remedy" is to remand to permit the People to present evidence he was on bail in case No. BA405412 when he committed the present offenses. The concession suggests, if not implies, error occurred. We conclude there was insufficient evidence to support the true finding on the bail allegation; therefore, the trial court erred on December 3, 2013 by imposing the bail enhancement.[7]

The remaining issue is the remedy. We note neither federal nor state constitutional *double jeopardy* principles preclude retrial of a prior conviction allegation in a noncapital sentencing context. (*People v. Trujillo* (2006) 40 Cal.4th 165, 174; *People v. Monge* (1997) 16 Cal.4th 826, 831; *id.* at p. 847 (conc. opn. of Brown, J.).) In *Johnson*, the appellate court noted the rule in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*), grounded in federal *due process* and the Sixth Amendment, that any fact increasing the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Johnson* also noted the "fact of a prior conviction" exception to that rule. (*Johnson*, *supra,* 208 Cal.App.4th at p. 1099; *Apprendi*, *supra,* 530 U.S. at pp. 469, 476, 490.)

*Johnson* further noted cases had held the *Apprendi* exception extended to such aggravating factors as whether the defendant had served a prior prison term, or was on probation or parole when the crime was committed. (*Johnson*, *supra,* 208 Cal.App.4th at p. 1099.) *Johnson* observed the general bases for those holdings were "that the

---

[7] Respondent argues appellant waived the error by failing to object when, on December 3, 2013, the court imposed said two-year bail enhancement. However, that enhancement was based on a true finding made at the conclusion of the only trial appellant had on the bail allegation, i.e., the August 9, 2013 court trial that concluded that day. Indeed, appellant objected to the sufficiency of the evidence on August 9, 2013, although only to the previously discussed minute order, the only proof presented. Respondent concedes a defendant generally may challenge the sufficiency of the evidence to support a judgment for the first time on appeal. We accept the concession (cf. *People v. McCullough* (2013) 56 Cal.4th 589, 596) and conclude that principle applies here. We also reach the merits of appellant's claim to forestall a claim of ineffective assistance of counsel. (Cf. *People v. Turner* (1990) 50 Cal.3d 668, 708.)

12

aggravating factors were all related to 'the fact of a prior conviction' by their recidivistic nature, rather than to the conduct involved in the charged offense(s), and that such factors could be proven by reliable documentation, such as court records." (*Id.* at pp. 1099-1100.) *Johnson* concluded, "Because section 12022.1 is an enhancement statute that, like the foregoing examples, penalizes recidivist conduct and does not relate to the commission of either the primary or secondary offense, defendant is not entitled to a jury trial on its truth." (*Id.* at p. 1100; see *id.* at pp. 1099-1100.)

Just as *Johnson* concluded a bail allegation is sufficiently similar to a prior conviction allegation with the result due process and Sixth Amendment jury trial protections do not apply to a bail allegation, we conclude a bail allegation is sufficiently similar to a prior conviction allegation with the result double jeopardy and due process (fundamental fairness) protections do not bar a retrial on a bail allegation. (Cf. *People v. Barragan* (2004) 32 Cal.4th 236, 241, 243-245.)[8]

We note that under Penal Code section 1262, a reversal of a judgment without directions is an order for a new trial, and an unqualified reversal remands the cause for a new trial. (*Barragan*, *supra,* 32 Cal.4th at p. 247.) Moreover, "[u]nder [Penal Code] section 1180, '[t]he granting of a new trial places the parties in the same position as if no

---

[8] Appellant argues *People v. Najera* (1972) 8 Cal.3d 504 (*Najera*) bars a retrial on fundamental fairness grounds. However, *Najera* is distinguishable. In *Najera*, the People presented evidence at a jury trial that the defendant was armed with a firearm but not that he personally used a firearm, and the issue of whether the defendant personally used a firearm was not submitted to the jury by instruction or verdict form. In other words, the issue of whether the defendant personally used a firearm, a conduct-related enhancement, was never submitted to the jury. *Najera* concluded imposition of a Penal Code section 12022.5 enhancement in these circumstances was error and refused to remand for a new trial before a new and different jury because this would constitute piecemeal litigation violating fundamental fairness protections. (*Najera*, at pp. 506-512.) In the present case, appellant having waived any right he had to a jury trial, the People presented evidence at a court trial that appellant was on bail, the issue of whether he was on bail was submitted to a trial court presumed to know the law, the court found true the bail allegation, and we are reversing that true finding on the ground of insufficiency of the evidence, a reversal akin to a reversal of a true finding on a status-related prior conviction allegation for insufficiency of the evidence.

trial had been had' and '[a]ll the testimony must be produced anew.'" (*Id*. at p. 250.) We will affirm the judgment, except we will reverse, without qualification or direction, the true finding on the bail allegation, thereby remanding the matter to permit a court trial (Pen. Code, § 1170.1, subd. (e)) solely on the bail allegation, and further proceedings consistent with this opinion. We express no opinion as to whether a retrial on the bail allegation should or should not occur, what the trial court's finding should be following any such retrial, or what, following remand, appellant's new sentence should be.

### *DISPOSITION*

The judgment is affirmed, except the trial court's true finding on the Penal Code section 12022.1, subdivision (b) allegation is reversed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:



EDMON, P. J.



EGERTON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.